UNITED STATES DISTRICT COURT JUDGE SULLIVAN
SOUTHERN DISTRICT OF NEW YORK

_Wen Liu_

DOC # _2_       09    CV    9663

_(In the space above enter the full name(s) of the plaintiff(s).)_

-against-

_Mount Sinai School of Medicine and agents_

_(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant. Addresses should not be included here.)_

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☑ Yes   ☐ No
_(check one)_

This action is brought for discrimination in employment pursuant to: _(check only those that apply)_

✓   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** _In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission._

_____   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
**NOTE:** _In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission._

✓   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
**NOTE:** _In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission._

✓   New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

✓   New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

_Rev. 05/2007_                    1

RECEIVED
OCT 2 2 2009
PRO SE

**I.    Parties in this complaint:**

A.    List your name, address and telephone number.  Do the same for any additional plaintiffs named.
Attach additional sheets of paper as necessary.

Plaintiff    Name _____Wen Liu_____
Street Address _349 w 125st #1F_____
County, City _Manhattan, New York_____
State & Zip Code _NY 10027_____
Telephone Number _(646) 897-3589_____

B.    List all defendants' names and the address where each defendant may be served.  Make sure that the
defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets
of paper as necessary.

Defendant    Name _Jeff Cohen (Mount Sinai Medical Center, Labor Relations)_
Street Address _19 East 98 street Suite 2H_____
County, City _Manhattan, New York_____
State & Zip Code _NY 10029_____
Telephone Number _(212) 241-8389_____

C.    The address at which I sought employment or was employed by the defendant(s) is:

Employer _Juan Wisnivesky (Division of General Internal Medicine_
Street Address _One Gustave L' levy Place, Box 1087_
County, City _Manhattan, New York_____
State & Zip Code _NY 10029_____
Telephone Number _(212) 241-6500 (General Information)_

**II.    Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were
discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts
to support those claims.  You may wish to include further details such as the names of other persons involved
in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related
claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as
necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

    _____        Failure to hire me.

    __✗____        Termination of my employment.

    _____        Failure to promote me.

    __✗____        Failure to accommodate my disability.

    __✗____        Unequal terms and conditions of my employment.

    X          Retaliation.

    ×          Other acts *(specify)*: __Race   discrimination__.

*Note:*   *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.     It is my best recollection that the alleged discriminatory acts occurred on: __from Oct, 2007 to Nov. 13rd. 2009__
                                                                             *Date(s)*

C.     I believe that defendant(s) *(check one)*:

          ✓        is still committing these acts against me.

                  is not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

          ☒    race   _____        ☒    color  _____

          ☐    gender/sex  _____       ☐    religion_____

          ☑    national origin _____

          ☐    age.   My date of birth is _____ *(Give your date of birth only*
                        *if you are asserting a claim of age discrimination.)*

          ☑    disability or perceived disability, __disc   bulgin & herniation__ *(specify)*

E.     The facts of my case are as follow *(attach additional sheets as necessary)*:
                       __( See  attached)__

*Note:*   *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

**III.**    **Exhaustion of Federal Administrative Remedies:**

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: __06/02/2009__ *(Date).*

B.  The Equal Employment Opportunity Commission *(check one)*:

_____   has not issued a Notice of Right to Sue letter.

__✓__   issued a Notice of Right to Sue letter, which I received on __07/12/2009__ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.  Only litigants alleging age discrimination must answer this Question.  N/A

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____   60 days or more have elapsed.

_____   less than 60 days have elapsed.

## IV.  Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: Loss Wages, Insurance Benefits, Retirements Benefits. emotional distress and punitive damages in the amount of $500,000.00. Compensatory damages (which the jude deems just and proper,

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22 day of Oct, 2009.

Signature of Plaintiff   Wenlin

Address   349 W 123st #1F
New York, NY 10027

Telephone Number   (646) 897-3589

Fax Number *(if you have one)* _____

*Rev. 05/2007*                    4

B.   The Equal Employment Opportunity Commission *(check one)*:

_____   has not issued a Notice of Right to Sue letter.

___✓___   issued a Notice of Right to Sue letter, which I received on __07/12/2009__ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.   Only litigants alleging age discrimination must answer this Question.   N/A

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____   60 days or more have elapsed.

_____   less than 60 days have elapsed.

## IV.   Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: Loss Wages, Insurance Benefits, Retirements
Benefits. emotional distress and punitive damages in the
amount of #500,000.00. Compensatory damages (which the jude deems
*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)* just and proper,

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22 day of __Oct__, 20 09

Signature of Plaintiff   Walin Wenlin

Address   349 W 123st #1F
New York, NY 10027

Telephone Number   (646) 897-3589

Fax Number *(if you have one)* _____

*Rev. 05/2007*                                4

## Appendix

1. Explanation why I delay to submit the complaint package
2. Copy of "Notice of Right to Sue Letter" .
3. Copy of "Determination and Order after Investigation" from the New York State Division of Human Rights.
4. Additional defendants' name list in Mount Sinai School of Medicine.
5. Statement of the facts of my case
6. Emails and Reference from Mr. Jonathan D. Meyer
7. Appreciation emails between SAS technical support manager and me
8. Copy of  Evaluation Report from the Dr, Yong-Hong Xiao, MD
9. Copy of MRI Test Report from the Dr, Yong Ming Mao, MD, Neurologist and Epileptologist.
10. Copy of Medical Records from the Emergency Room, Mount Sinai Hospital.
11. Copy of First page of Evaluation from my former employer Juan Wisnivesky
12. Police information happened on Nov.13rd, 2008

## Explanation of why I delay to file my complaint

Dear Mr. Judge:

My name is Wen Liu. I am sorry that I am filing my complaint beyond the applicable period. There are three reasons for the delay:

1. English is not my native language, I have to try my best to write these facts to make the documentations to be formal. I do take some time to have all them done.
2. Because I have to do so many researches in the different law fields before I submit this complaint package.
3. I have visited many lawyers in different fields, but they don't have time to write down the story and compose the package,  I have to take  longer time.

Your granted extension and favorable consideration are much appreciated!

Wen Liu (Wenlin)
Wen Liu

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Wen Liu**<br>**349 West 123rd Street, Apt. #1F**<br>**New York, NY 10027** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2008-05618** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☐ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☒ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other (briefly state) |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____        7/7/09

**Spencer H. Lewis, Jr.,**              *(Date Mailed)*
**Director**

Enclosures(s)

cc:    **MOUNT SINAI SCHOOL OF MEDICINE**
       **Director of Labor Relations**
       **One Gustave L. Levy Place, Box 1099**
       **New York, NY 10029**
       **Attn: Ellen J. Rosenthat Esq.**

## DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

## WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(312) 988-5522

New York State Bar Association
(800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

```
┌─────────────────────────────────────────┐
│ NEW YORK STATE DIVISION OF                │
│ HUMAN RIGHTS on the Complaint of          │
│                                           │
│ WEN LIU,                        .         │
│                      Complainant,         │
│                                           │
│                 v.                        │
│                                           │
│ MOUNT SINAI SCHOOL OF MEDICINE,           │
│                      Respondent.          │
└─────────────────────────────────────────┘
```

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10127589**

Federal Charge No. 16GA805618

    I, Wen Liu, residing at 349 West 123rd Street, New York,
NY, 10027, charge the above named respondent, whose address is
Director of Labor Relations
One Gustave L. Levy Place, Box 1097, New York, NY, 10029-6574
with an unlawful discriminatory practice relating to employment
in violation of Article 15 of the Executive Law of the State of
New York (Human Rights Law) because of race/color, disability.

    Date most recent or continuing discrimination took place is
8/15/2008.

    The allegations are:

    1.   I am Asian.  Because of this, I have been subject to
unlawful discriminatory actions.

    2.   On September 25, 2007, I was hired by Respondent as a
Statistical Data Analyst. I believe that my work performance has
been satisfactory.

    3.   On or about December 2007, I received an employee
evaluation of "Average" that I was uncomfortable with.
Jacqueline Arciniega, (Hispanic) Clinical Data Manager did my
employee evaluation even though she did not supervise me in any
way.

    4.   When I asked my actual Supervisor Juan
Wisnisvesky(Hispanic), for an evaluation, he delayed in giving
it to me. It was not until about April 2008, that I received a
corrected evaluation score of "Excellent" from him.

5.    Since that time, I have been harassed unnecessarily by Respondent. I began to receive written warnings from Mr. Wisnisvesky.

6.    On June 5, 2008, while at work, I had a dizzy spell and fell down.  On June 6, 2008, I was still dizzy and I called into work and told them I would not be able to come into work. On or about June 12, 2008, I returned to work. When I returned to work I received another written warning.

7.    On August 15, 2008, I was terminated by Respondent. I believe that I was terminated because I disputed the evaluations and written warnings of my Hispanic coworkers and because of my dizzy spells.

8.    Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of race/color, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

_Wen Liu_
Wen Liu

STATE OF NEW YORK ) SS:
COUNTY OF NEW YORK )

Wen Liu, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_Wen Liu_
Wen Liu

Subscribed and sworn to before me this 19th day of August, 2008

_William F. Marshall_
Signature of Notary Public

WILLIAM F. MARSHALL
Notary Public, State of New York
No. 01MA6066080
Qualified in New York County
My Commission Expires November 5, 20 09

- 3 -

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 | PERSON FILING CHARGE:<br>Wen Liu<br>THIS PERSON (Check one):<br>Claims to be aggrieved [x]<br>Files on behalf of other(s) [ ] |
| TO:<br>Mount Sinai School of Medicine<br>Director of Labor Relations<br>One Gustave L. Levy Place, Box 1097<br>New York, NY 10029-6574 | DATE OF ALLEGED VIOLATION:<br>8/15/2008<br>PLACE OF ALLEGED VIOLATION:<br>New York County<br>EEOC CHARGE NUMBER:<br>16GA805618<br>FEPA CHARGE NUMBER:<br>10127589 |

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

    [X]  Title VII of the Civil Rights Act of 1964
    [ ]  The Age Discrimination in Employment Act of 1967 (ADEA)
    [ ]  The Americans with Disabilities Act (ADA)

HAS BEEN RECEIVED BY: The New York State Division of Human Rights (FEP Agency) and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon expiration of any deferral requirements if this I a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the FEP Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the FEP Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the FEP Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final decision and order of the above named FEP Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]  An Equal Pay Act investigation (29 U.S.C. §206(d)) will be conducted by the Commission concurrently with the FEP Agency's investigation of the charge.

[X]  Enclosure: Copy of the Charge

BASIS FOR DISCRIMINATION:  Race/Color

CIRCUMSTANCES OF ALLEGED VIOLATION:
    SEE ATTACHED N.Y.S. DIVISION OF HUMAN RIGHTS COMPLAINT

DATE: August 19, 2008

                    TYPED NAME OF AUTHORIZED EEOC OFFICIAL:
                    Spencer H. Lewis, Jr.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

### EEOC REVIEW PROCEDURE

If you want the EEOC to review the New York State Division of Human Rights
final determination, because you are not satisfied with their final findings,
you may request that the EEOC conduct a substantial weight review.  This
request must be done in writing to the EEOC and within fifteen (15) days from
the date you received the New York State Division of Human Rights final
determination.  Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the
New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

Equal Employment Opportunity Commission
Attn: State and Local Unit
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

This address is for review purposes only.  Remember, if you have questions
concerning the status of your case, you must contact the New York State
Division of Human Rights.


Date: August 19, 2008

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

WEN LIU,

Complainant,

v.

MOUNT SINAI SCHOOL OF MEDICINE,
Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10127589

---

Federal Charge No. 16GA805618

On 8/19/2008, Wen Liu filed a verified complaint with the
New York State Division of Human Rights ("Division") charging
the above-named respondent with an unlawful discriminatory
practice relating to employment because of race/color,
disability in violation of N.Y. Exec. Law, art. 15 (Human Rights
Law).

After investigation, and following opportunity for review
of related information and evidence by the named parties, the
Division has determined that there is NO PROBABLE CAUSE to
believe that the respondent has engaged in or is engaging in the
unlawful discriminatory practice complained of.  This
determination is based on the following:

The investigation revealed in September 2007, the
Complainant began working for the Respondent as a Statistical
Data Analyst.  The Complainant was interviewed, hired,
supervised and eventually terminated by an Associate Professor
of Medicine and the Clinical Research Manager of the Division
where she was formerly employed.

During the Complainant's employment with the Respondent,
she was counseled and disciplined for performance related
issues, including unsatisfactory performance, absenteeism and
inappropriate conduct.  In June 2008, the Complainant received a
final warning for Excessive absenteeism, failure to follow
instructions and insubordination.  On August 15, 2008, the
Respondent terminated the Complainant's employment.

The Respondent asserted that they had no knowledge of any disability suffered by the Complainant.  The investigation revealed that the Complainant did not inform the Respondent or provide any medical documentation in support of, or relating to her asserted medical condition.  The Complainant submitted doctor's notes stating she was seen or had an appointment, in connection with absences from work.  The Complainant neither requested nor was denied any accommodation for her asserted disability.

There were no examples of any similarly situated employee, receiving similar or more favorable treatment, provided by the Complainant.

The record does not support a nexus between the allegations of the verified complaint and the Complainant's race and or stated disability.


The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination.  A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458.  DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA).  Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC).  You have the right to request a review by EEOC of this action.  To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:        **MAY 1 8 2009**
         New York, New York

STATE DIVISION OF HUMAN RIGHTS

By:    *David E. Powell*

         David E. Powell
         Regional Director



NEW YORK STATE
## DIVISION OF HUMAN RIGHTS
ONE FORDHAM PLAZA, FOURTH FLOOR
BRONX, NEW YORK 10458

(718) 741-8400
Fax: (718) 741-3214
www.dhr.state.ny.us

**DAVID A. PATERSON**
GOVERNOR

**GALEN D. KIRKLAND**
COMMISSIONER

Dear Division User:

In an effort to improve the quality of the services we offer, the Division of
Human Rights is conducting a Customer Satisfaction Survey to measure the overall
satisfaction of complainants, respondents, and counsel with the Division's process
and personnel. You can participate in the Survey by visiting our website, at:
www.dhr.state.ny.us/survey.html.

Please take a few moments and share your thoughts and ideas by completing
our online Customer Satisfaction Survey.  Your feedback is critical to ensuring that
the Division continues to improve and operates in the most professional, fair, and
efficient manner as possible.  We thank you for helping in that effort.

Sincerely,

Galen D. Kirkland
Commissioner

**Additional dependents name list**

Johnson, Karen (HR)

Mount Sinai Medical Center
Vice-President, Labor Relations
19 East 98th Street, Suite 2H
New York, 10029
212-241-8381

Jacqueline Arciniega

Primary Care Building

The MounDivision of General Internal Medicine

Mount Sinai Hospital

One Gustave L Levy Place, Box 1087

New York. NY 10029-6574

1470 Madison Avenue (101" 102'" Street)

Tel: (212) 659-8551

Fax: (212) 831-8116

### Statement of facts of my case

I am filing this employment discrimination complaint because My former employer, Mount Sinai School of Medicine, discriminated against me in my employment based on my race as an Asian and based on my handicap.

I originally came from China in 1998. I studied at Columbia University and obtained (2) Masters Degree, one Degree in Statistics, from School of Arts and Science and the other Degree in Health Education, from Teachers College..

Because I have been studying and working in the Statistical field for 7 years, after only one interview, I was hired immediately in the end of August, 2007, to work as a statistical Data Management analyst for the Division of the General Internal Medicine, at Mount Sinai Medical School.

Because I was required to work with national security huge databases, I was told that the hardware couldn't be taken out from my office. My work was consisted of Data Management and Programming and data analysis.

I was also asked to teach my boss, Juan Wisvesky, how to do the programming. I worked extremely hard and effectively. I taught my boss everything that I did in my work and answered all of his questions relating to statistical data management and analysis. In the first three months, most days I would work from 9:00 am to midnight (12:00 am). One night I even worked until 2:00am. Approximately right after those months, I began having serious neck pain.

In December of 2007, I complained to everyone working around my work station that I had a disc problem on my lower back.

By May 2008, I was feeling dizzy and I did not know why. It was that time that my employer chose to give me the first written warning and claimed that I refused to work with another group.

On June 5, 2008, I felt dizzy and fell on the floor in my boss office. My boss, Juan Wisvesky, and Dr. Adler Rhodes both moved me back to my office, I fell on the floor. They locked the door and laughed loudly outside. I passed out in my office. Eventually, using a wheelchair, Juan, Jacqueline Arciniega and the security guard bought me to the Emergency Room, where I was examined by a few doctors. Over there, Jacqueline only told the doctors that I was lying on the floor in my office but covered other details. I complained about severe neck pain, extremely headache, and extremely weak after I fell in the office. The original doctor report dated June 5th 2009 does not state that I had neck pain and fell in the Juan's office. After I came back to the office that night, Dr. Alex Friedman called a Taxi for me to send me home.

On that next day, I still felt extremely dizzy, headache and weakness, and fell at home again and had to go back to see the Walk-in Doctors in Mount Sinai Medical Center. After that, I went to Dr. Rhodes office to appreciate his help after I fell. He kept silence just as nothing ever happened at all.

Depending on Mount Sinai's policies, I requested Juan and Jacqueline to fill up the "Accident Reports", but they didn't do it at all.

Because I was only one staff member with a few faculties working on the 8th floor, the rest in our Division are on the 6th floor. So, my fell and sickness in the office was completely covered by Juan

Wisnivesky and Jacqueline Arciniega.

A few days later, I passed out again in the Levy Library; Mr. Jonathan D. Meyer came over with a security guard and sent to the Emergency Room.

My employer always received a doctor's note each time. However, while I was still sick and dizzy and extremely weak, only a few days after I fell at work, I received the second written warning from my employer. The labor relation representative reprimanded me that I did not improve at work. The fact that I was having medical problems and still going through medical tests was completely overlooked by her. I tried to explain to the labor representative that my situation and I was still having medical problems with unknown reasons, however she stopped me in a very rude tone and said that I had to listen to whatever she was telling me about my situation at work.

I cried and argued with Juan why he treated like this and passed out in the office again, Dr. Alex Friedman came over and checked my blood pressure, Juan called '911', two Emergency Service Policemen came over and took me to the Emergency Room. After I came back to my office in that night, Dr. Alex Friedman called a Taxi for me to send me home.

About 20 days after I fell at work, I passed out three times in the Mount Sinai area and was sent to the Emergency Room three times.

Since June 5th, 2008, I started to go see different doctors in Mount Sinai. Meanwhile, except the sick leave time from doctors' permission, I still had to go back to work with dizziness and neck pain.

However, a neck MRI conducted by the Dr. YongMing Mao, a Neurologist, nine days after I fell at work showed that I have a bulging disc and disc herniation on my neck.

Before the end of June 2008, my employer had already hired a new Data Analyst to replace me. I knew I would be lad off by the end of June 2008. However in the middle of June the new Data Analyst dropped the Database hardware on the floor in my boss office. I was then told to redo the entire data base and make extra copies.

I redid on those projects until completion on August 13, 2008. On August 14, 2008, I was terminated right away. At that time I was still receiving treatment for neck pain. However, after I was laid off, I could no longer receive them because I had no medical insurance.

On Sep, 2008, Jacqueline even emailed to the all of faculty and staff in the Division to prohibited them from having personal talk with me

My termination was discriminatory because of my disability. I provided my employer and Labor Relations with all medical documents relating to all absences. My dismissal from Mount Sinai School of Medicine falls under the Rehabilitation Act. A few days after I fell on the job I was diagnosed with having bulging and disc herniation on my neck, which limited one or more of my life's activities.

As a result of the fall and neck injury, I cannot drive anymore. I cannot lift heavy material. I cannot look back from both side of my neck. From the left side of my neck to the fingers, I feel numbness and constant pain all the time since I fell. I still feel dizzy, headache and nausea. I cannot exercise anymore, I cannot swim anymore as I cannot move my neck easily. Worst of all I cannot work with computers. As I work with computers, I feel pain on the left side of my neck.

I am disabled under the American Disability Act.

Furthermore, I am otherwise qualified to perform the job. As mentioned previously I trained my boss in Data Programming, step by step. After I completed a task, my boss would check my work by asking me what I did and how I reached the Data in question. I would explain to him step by step what I did and he would ask me questions.

As I was over qualified and able to do the Data Programing better that anyone in my Department, I satisfied the second requirement of the Act. Thirdly, I was discharged because of my handicap. After the person hired to replace me dropped the Data Base Hardware on the floor in the middle of June 2008, I was asked to replace the entire data base, which I had created since I came to work in my office.

It took me (2) months to recover the entire data base. I also made extra copies for my boss as they told me to do. I completed the recovery of all the Data Base on August 13, 2009. The next August 14, 2009, I was terminated.  4. As Mount Sinai receives Federal Assistance, they are prohibited from discriminating on the basis of race, national origin and handicap. I believe I was fired because of my national origin and handicap.

RESPECTFULLY,

WEN  LIU

**RE: reference**

From: "Meyer, Jonathan" <Jonathan.Meyer@mountsinai....    Add to Contacts    Mon, September 8, 2008 10:46:54 AM
To: lyx20031972@yahoo.com

Wen,

I'm glad to help you. I think you weren't treated fairly at Sinai and you deserve fair treatment.

Good luck,

Jonathan

Jonathan D. Meyer, MPH, ABD
Division of General Internal Medicine
Box 1087
Mount Sinai School of Medicine
1 Gustave L. Levy Place
New York, NY 10029
212-824-7506

-----Original Message-----
**From:** wen liu [mailto:lyx20031972@yahoo.com]
**Sent:** Monday, September 08, 2008 1:32 PM
**To:** Meyer, Jonathan
**Subject:** Re: reference

Jonathan:
   Thank you! I will send this reference to recruiters right away.
   In such difficult situation. I know that you are real friend!

--- On **Mon, 9/8/08, Meyer, Jonathan <_Jonathan.Meyer@mountsinai.org_>**
wrote:

From: Meyer, Jonathan <Jonathan.Meyer@mountsinai.org>
Subject: reference
To: lyx20031972@yahoo.com
Date: Monday, September 8, 2008, 11:07 AM

Wen,

Here's the edited reference.

Good luck,

Jonathan

Jonathan D. Meyer, MPH, ABD
Division of General Internal Medicine
Box 1087
Mount Sinai School of Medicine
1 Gustave L. Levy Place
New York, NY 10029
212-824-7506



**Division of General Internal Medicine**
*Center for Advanced Medicine*

The Mount Sinai School of Medicine
One Gustave L. Levy Place, Box 1087
New York, NY 10029
17 E. 102nd Street, 6 West
Tel: (212) 824-7505
Fax: (212) 824-2317

August 21, 2008

To Whom It May Concern:

This is a letter of reference for Wen Liu, a Data Management Analyst with the Division of General Internal Medicine, in the Department of Medicine, in The Mount Sinai School of Medicine. I have known Ms. Liu for nearly a year, when she joined our division in September 2007. I served as an advisor to Ms. Liu in her integration into the division, as she was new to the institution and the procedures here can be arcane.

Over the course of the year, I have seen her passion associated with both her job and her career, to the extent that she would need to be encouraged to end her work for the day, to return the next day to continue. She lives for database management, and is not content until she has completed the task at hand.

Moreover, she has devoted her career to becoming expert at SAS programming, and is part of a network of database professionals who counsels each other in the fine points of getting things done elegantly. Frankly, I wish I were as devoted to my professional pursuits as she is.

One of the areas in which I have advised her is in the area of proficiency in English. She is native Chinese, and has been in the U.S. roughly fifteen years, having spent all her time either working in, or studying database management. Consequently, her English is very specialized. I have encouraged her to broaden her reading, and was very pleased to learn that she had become a regular reader of the New York Times. The goal, in this case, is not to adopt the positions or values of the Times, but to become more familiar with the wider use of the language, and reading the newspaper helps her do this.

I can vouch for her character – she is honest, hard-working, professional, and passionate about her work. If I had the need for a database manager in my area, I would not hesitate hiring her. Feel free to contact me if you want further information of if you have questions: 212-824-7506.

Sincerely yours,

Jonathan D. Meyer
Finance Manager, Division of General Internal Medicine

## FW: [SAS 7610123864] follow up

From: "Liu, Wen L." <Wen.Liu2@mountsinai....   Add to Contacts   Wed, August 13, 2008 12:18:17 PM
To: lyx20031972@yahoo.com

-----Original Message-----
From: Maggie Underberg [mailto:Maggie.Underberg@sas.com]
Sent: Wednesday, August 13, 2008 2:59 PM
To: Liu, Wen L.
Subject: RE: [SAS 7610123864] follow up

Hi Wen

Thank you so much for taking the time to let me know about the customer
service excellence that you received from John Brower.

Kind regards,

Maggie Underberg
Technical Support Manager - Windows Systems
www.sas.com

SAS(r) ... THE POWER TO KNOW(r)

-----Original Message-----
From: Liu, Wen L. [mailto:Wen.Liu2@mountsinai.org]
Sent: Wednesday, August 13, 2008 2:51 PM
To: Maggie Underberg
Subject: FW: [SAS 7610123864] follow up

Dear Maggie:
My name is Wen Liu. I am a statistical Data Analyst in the Division
of General Internal Medicine, The Mount Sinai Medical Center, New York.
I am writing you this letter to praise John in your group for his
very responsible attitude and significant support with highly repeated
problems of 'out of resources' when I was working with my huge datasets.

During these a few weeks, the same problem happened 27 times which
seriously deferred working process. From temporary work library to
permanent libraries, John helped me go through each steps to provide his
effective support, every a few days, he called in to follow up to see if
the problem completely resolved or if there was anything new so that he
can help with.
I am an experienced SAS user, and have been working in this field for
several years; I also worked with other SAS support representatives
before. But it's the first time for me to meet so responsible and very
professional one like John, I am really moved for his work. He really
helped me a lot when I had such "headache" problem not only because of
his complete skills but also professional attitude. He should have
wonder personality and very love his job! Otherwise, how can he catch
those points and keep them to a normal customer like me?
Work not only helps us survive but creates different pictures for the
people anywhere. John really does wonder work!

I am especially writing this letter to you to repay his efforts and
appreciate his help!

Thank you very much!

10/20/2009

Wen Liu

08/13/08

-----Original Message-----
From: SAS Technical Support [mailto:support@sas.com]
Sent: Wednesday, August 13, 2008 10:56 AM
To: Liu, Wen L.
Subject: Re: [SAS 7610123864] follow up

::~:: NOTE: IF YOU REPLY, ALL TEXT FOLLOWING THIS LINE WILL BE IGNORED.


Thank you for submitting your question to SAS Technical Support.
It has been assigned tracking number

   7610123864

Please include this tracking number EXACTLY as it appears
above in the subject line of all further correspondence with
Technical Support on this question.
A Technical Support consultant will respond to you within
24 hours (not including weekends and holidays).


--- Information You Provided ---
Name:      Wen Liu
Sitenum:   0001209023
Company:
Phone:     +1 (212) 824-7562
OS:
Product:   SAS Configuration and Troubleshooting Ut
Release:   9.1.3
----------------------------


--- Your Problem Description ------

John:
  This is Wen Liu, the reference number is 7610118437.
  I called you last Friday afternoon and left a message as we discussed
before. I left for somewhere else after that, when I came back, it was
5:10pm. I didn't know if you called me or not.
  Following your instruction, I tested my programs for a few days. Now
the program is working now. It's a good news. I would like to let you
know.

   Thank you very much!

   P.S: My email address is right, please contact me if you like. Thank
you again!

   Wen

--- End of Problem Description ------

July 5, 2008

RE: Liu, Wen
DOB: 3/1/67

**Office Note:**

I have the pleasure of re-evaluating patient Liu, Wen in my office on 7/5/08 for acute
exacerbation of neck pain with numbness of both hands

**HPI:** Patient Liu, Wen is a 41 year-old female who complains of persistent neck pain for
several months with acute exacerbation for the past week and complains of moderate pain
and difficulty with overhead activities, lowering her head down, sleeping at night,
reading or working on the computer for more than 30 minutes and turning head sideways.
MRI of cervical spine on 6/19/08 showed at C5-6 there is disc bulge with central disc
protrusion impinging upon the thecal sac and to a lesser degree the cervical spinal cord
creating moderate to severe central canal stenosis the neural foramen are patent. At C6-7
there si a disc bulge with a right foraminal protrusion there is mild right neural formianl
narrowing the left neural foramen is patent. There is no central canal stenosis. Pain scale
is 8-10/10. Patient takes Motrin/Tylenol with little relief

<u>Physical Examination</u>
**Range of Motion:**
Cervical: Flexion 40, Lateral bending Lt 20, Rt 20, Ext 15, Rotation 20 (In degrees).
Palpation: Moderate tenderness of bilateral cervical parapsinals.
**Neurological:** Alert and oriented x 3, Cranial Nerves: II-XII are intact.
Motor:  Bilateral Upper Extremities: 4+/5.
Sensation is decreased to light touch and pin prick along bilateral C6-7 distribution.
DTR: decreased in bilateral biceps.
Clonus: None, Babinski: Downward Bilaterally, Cerebellar testing was intact.
Gait: Within Normal Limits.
Bilateral Spurling: Positive.  Bilateral Tinnel: Positive   Bilateral Phalen: Positive

**Impression:** Acute exacerbation of severe neck pain secondary to HNP.

**Treatment:** Continue PT twice a week for 4 weeks. Teach HEP

Sincerely,

Yong-Hong Xiao, M.D.

**Referring Provider 1**
YONGMING MAO  MD
132-52 41 AVE.
SUITE M1
Flushing, NY 11355

RE: LIU, WEN                              Gender: Female
Chart #: 2411599                          DOB: 03/01/1967
Location: Harlem                          Auth:
Date of Service:06/19/08                  Mail: Y Fax:Y
Patient Phone #:(646) 897-3589

---

Clinical data:  Neck pain.

## MRI OF THE CERVICAL SPINE (WITHOUT CONTRAST):

Multiplanar multisequence images of the cervical spine were obtained.  Sagittal images were
obtained using T1 and T2 weighted factors.  Axial images were obtained using gradient echo
technique.

The atlantoaxial joint has mild degenerative change.  There is no fracture or dislocation.  There is
straightening of cervical spine lordosis consistent with muscle spasm.  The vertebral marrow signal
is normal in signal intensity.  The paraspinal musculature is normal in appearance.

C2-3:  There is no bulge or protrusion.  There is no evidence of neural foraminal or central canal
stenosis.

C3-4:  There is a disc bulge impinging upon the anterior aspect of the thecal sac creating mild
central canal stenosis.  The neural foramen are patent.

C4-5:  There is a mild disc bulge impinging upon the anterior aspect of the thecal sac creating mild
central canal stenosis.  The neural foramen are patent.

C5-6:  There is a disc bulge with central disc protrusion impinging upon the thecal sac and to a
lesser degree the cervical spinal cord creating moderate to severe central canal stenosis.  The neural
foramen are patent.

Page 1 of 2

D/w pt
XR
6/26/08

RE: LIU, WEN
Chart #: 2411599
Location: Harlem
Date of Service:06/19/08
Patient Phone #:(646) 897-3589

Gender: Female
DOB: 03/01/1967
Auth:
Mail: Y Fax:Y

## MRI OF THE CERVICAL SPINE (WITHOUT CONTRAST):

C6-7: There is a disc bulge with a right foraminal protrusion. There is mild right neural foraminal narrowing. The left neural foramen is patent. There is no central canal stenosis.

C7-T1: There is no bulge or protrusion. There is no evidence of neural foraminal or central canal stenosis.

### IMPRESSION:

1. AT C5-6, THERE IS A DISC BULGE WITH CENTRAL DISC PROTRUSION IMPINGING UPON THE THECAL SAC AND TO A LESSER DEGREE THE CERVICAL SPINAL CORD CREATING MODERATE TO SEVERE CENTRAL CANAL STENOSIS. THE NEURAL FORAMEN ARE PATENT.

2. AT C6-7, THERE IS A DISC BULGE WITH A RIGHT FORAMINAL PROTRUSION. THERE IS MILD RIGHT NEURAL FORAMINAL NARROWING. THE LEFT NEURAL FORAMEN IS PATENT. THERE IS NO CENTRAL CANAL STENOSIS.

Thank you for your referral.

*Narayan Paruchuri MD*
Document electronically signed
H/-IT-SN

Page 2 of 2

*www.DoshiDiagnostic.com*



**Wen Liu**

**6/9/2008 5:20 PM   Office Visit**

**MRN: 2447724**

Description: **41 year old female**

Provider: **MICHELLE A. ROACH, MD**

Department: **Ima Firm D**

---

#### Encounter Visit ID

Visit ID
**44686628**

#### Patient PCP Information

| Provider | PCP Type |
|---|---|
| JESSICA T. PETROS, MD | General |

#### Visit Insurance

| Payor | Plan | Subscriber | Member ID |
|---|---|---|---|
| UNITED HEALTH CARE | UNITED HEALTH CARE EMPLOYEE | LIU,WEN | 854952876 |

#### Reason for Visit

**Other**                                      dizzy spells

#### Vitals - Last Recorded

| BP | Pulse |
|---|---|
| 107/59 | 76 |

Vitals History Recorded

#### Pain Information (Last Filed)

| Score | Location | Comments | Edu? |
|---|---|---|---|
| | | fingerstick done result 98 | |

#### Progress Notes

**MICHELLE A. ROACH, MD**  Mon Jun 9, 2008  5:58 PM  Signed
SUBJECTIVE:  Wen Liu is a(an) 41 y.o. female who presents with a chief complaint of dizziness for the past a few days.  She describes the dizziness as a spinning sensation, a lightheaded sensation, falling, which are improved somewhat.  The following actions precipitate or aggravate the dizziness: rapid head movements, rising from a supine position.

Associated symptoms:none.

Review of Systems:

General:          no fever, chills, night sweats, anorexia, malaise, fatigue, or weight change
HEENT:            no nasal congestion, rhinorrhea, sore throat, or facial pain
Gastrointestinal:  no nausea, vomiting, diarrhea, constipation, or abdominal pain
Hematologic:      no unexplained bleeding or bruising

OBJECTIVE:  Ms. Liu appears in no apparent distress.


ASSESSMENT/Plan:  BPPV
Cont meclizine 25mg
ENT consult

This is a confidential document. Please dispose of it appropriately.

Consider vestibular rehab if no improvement
Head CT tonight or tomorrow


Minimize caffeine and alcohol.
Return to clinic in with persistent problems .

**ANA T. BLOHM, MD** Mon Jun 9, 2008  7:07 PM  Addended
The case was reviewed and discussed with MICHELLE A ROACH, and I have personally evaluated and
seen the patient. I agree with the history, examination, and plan of care.

### History Reviewed

Date Reviewed:
**Last Reviewed on 6/6/08 by COCINA, AMY E**

### Allergies as of 6/9/2008                                          Date Reviewed:  **6/6/2008**   Reviewed By:  **COCINA, AMY E**

|  | Noted | Type | Reactions |
|---|---|---|---|
| **Nkda (No Known Drug Allergies)** | 1/24/2008 | | Unknown |
| **Fish Product Derivatives** | 1/24/2008 | | C/o fish and shellfish allergy, Hives |
| **Dmdm Hydantoin** | 6/5/2008 | | Rash |

### Medications Reviewed

| User | Date and Time |
|---|---|
| SKLOOT, GWEN S., MD [102895] | 6/5/2008 11:58 AM |

### Visit Diagnoses and Associated Orders

**Benign Paroxysmal Positional Vertigo** [386.11]  - Primary
   CONSULT TO ENT [9008]
   CT HEAD W/O CONTRAST [70450]

**ORDERS WITHOUT AN ASSOCIATED DIAGNOSIS**
   BLOOD GAS/ELEC PROF-ART (POCT) [100015]

### Level Of Service

**OFFICE VISIT,EST,LEVL II (99212) [99212]**

### Encounter Status

Electronically signed by MICHELLE A. ROACH, MD on 6/9/08 at 6:52 PM

### Chart Cosign

| Accepted By | Accepted On |
|---|---|
| **Ana Blohm, MD** | Mon Jun 9, 2008  7:07 PM |

### All Flowsheet Templates (all recorded)

AMBULATORY VITALS FLOWSHEET Flowsheet

### Letters

**ROACH, MICHELLE on 6/9/2008**             Open


| Chemistry (Last result in 547 days) | | | | | | |
|---|---|---|---|---|---|---|
| Sodium | Potassium | Chloride | CO2 Total | Creatinine | Glucose | BUN |
| 142  (03/27/08) | 4.0  (03/27/08) | 106  (03/27/08) | 28.0  (03/27/08) | 0.7  (03/27/08) | 115  (03/27/08) | 12  (03/27/08) |

| Chemistry Cont. (Last result in 547 days) | | | | | | |
|---|---|---|---|---|---|---|
| Albumin | Bili Total | Calcium | Alk. Phos. | Protein Total | AST (SGOT) | ALT (SGPT) |
| 4.5  (10/24/07) | 0.4  (10/24/07) | 9.3  (03/27/08) | 63  (10/24/07) | 7.3  (10/24/07) | 22  (10/24/07) | 22  (10/24/07) |

| Hematology (Last result in 547 days) | | | | |
|---|---|---|---|---|
| WBC | RBC | Hemoglobin | Hematocrit | Platelet |
| 8.7  (06/05/08) | 4.15  (06/05/08) | 12.9  (06/05/08) | 38.6  (06/05/08) | 243  (06/05/08) |

| Lipids (Last result in 547 days) | | | | | |
|---|---|---|---|---|---|
| TOT Cholesterol | Triglycerides | HDL Cholesterol | LDL Cholesterol | CHO/HDL Ratio | LDL/HDL Ratio |
| 161  (01/24/08) | 172  (01/24/08) | 35  (01/24/08) | 92  (01/24/08) | 4.6  (01/24/08) | 2.6  (01/24/08) |

**Coumadin Clinic Only**

| Episodes |
|---|
| ** None ** |
| **Flowsheet Report** |
| ** Patient has no data for this report ** |
| **Flowsheet Report** |
| ** Patient has no data for this report ** |



# Wen Liu

**6/6/2008 12:20 PM**  Office Visit
MRN: **2447724**

Description: **41 year old female**
Provider: **AMY E. COCINA, MD**
Department: Ima Firm B

### Encounter Visit ID

Visit ID
**44683056**

### Patient PCP Information

Provider
**JESSICA T. PETROS, MD**

PCP Type
General

### Visit Insurance

| Payor | Plan | Subscriber | Member ID |
|---|---|---|---|
| UNITED HEALTH CARE | UNITED HEALTH CARE EMPLOYEE | LIU,WEN | 854952876 |

### Reason for Visit

**Other**

PT STS STILL FEELING WEAK TIRED AND DIZZY. PT STS HAD A FALL YESTERDAY DUE TO DIZZINESS

### Vitals - Last Recorded

| BP | Pulse | SpO2 |
|---|---|---|
| 98/62 | 83 | 97% |

Vitals History Recorded

### Progress Notes

**AMY E. COCINA, MD**  Fri Jun 6, 2008  1:54 PM  Signed
**FOLLOW UP:**
Date: 6/6/2008

**Subjective:**

**Informant:** Patient

**Chief Complaint:** dizzy, fall

**HPI:** Wen Liu presents to Internal Medicine Associate for follow up of medical conditions as listed and updated below:

**Patient Active Problem List**

| Diagnoses | Date Noted |
|---|---|
| • Cough [786.2] | 06/04/2008 |
| • Eczema [692.9BV] | 05/30/2008 |
| • Anxiety [300.00E] | 01/24/2008 |
| • LBP (Low Back Pain) [724.2AF] | 01/24/2008 |

41F with no PMH p/w dizziness since yesterday. Yesterday, felt dizzy, which means vertigo plus blackness before eyes. Was in her office, got up, fell to floor, no LOC, went to ED, where c/o same symptoms but stated had mild mental status change (grogginess) during event and palpitations. Today, no palpitations, but is still weak, dizzy (not currently spinning, more like no energy), numbness on forehead, pain when presses on temples, denies N/V currently but was nauseated on way home from ED yesterday. Last meal one hour ago, eating didn't help yesterday or today. No menstuating, no stress at home. Had PFTs yesterday for cough for several months. One hour after, was ok, but then 2nd hour, felt dizzy and sweating and had to lie down. The fall was 4-5 hours after the PFTs. Has lower abd pain.

**Review Of Systems:**
Complete ROS performed. All systems negative except as detailed in HPI or below.

**PMH:** history reviewed
Patient has a past medical history of Anxiety (1/24/2008), LBP (Low Back Pain) (1/24/2008), Eczema, Cough, PPD Positive, and Allergic Rhinitis.

**Family History:** reviewed and without changes.
Patient family history includes Asthma in her sister; Cancer in her father and maternal grandmother; Diabetes in her mother; Heart in her mother; Hypertension in her mother; and Lipids in her brother.

**Social History:** Reviewed and without changes.
She reports that she has never used tobacco. She reports that she does not currently engage in sexual activity. She reports that she does not currently drink alcohol or use illicit drugs.

**Medications - Previous to this Encounter**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • ASTELIN 137 mcg Nasl SprA | inhale 2 sprays in each nostril by intranasal route 2 times per day | 1 | 3 |
| • Fluticasone 50 mcg/Actuation Nasl SpSn | 1 spray into each nostril once daily | 1 | 5 |
| • Loratadine 10 mg Oral Tab | take 1 tablet (10 mg) by oral route once daily | 30 | 5 |
| • Ibuprofen 400 mg Oral Tab | 400mg orally every 6 hours as needed for pain | 100 | 5 |

**Health Maintenance and Immunization:**

There is no immunization history on file for this patient.
Health Maintenance: deferred

**Objective:**

**Multi-System Exam:**
BP 98/62 | Pulse 83
There is no height or weight on file for this encounter.

**Physical Exam:**

Constitutional: well developed/well nourished and appears uncomfortable

Eyes: pupil equally round and reactive to light (PERRL)  bilaterally, extra-ocular muscle intact (EOMI) bilaterally and EOM test makes her nauseous

Cardiovascular: nondisplaced place of maximal impulse (PMI), normal s1, s2 , regular rhythm and no murmurs

Respiratory: clear to auscultation bilaterally, no rales, no wheezing and no accessory muscle use

Gastrointestinal: normal bowel sounds and lower abd pain on palpation

Neuro: alert, awake & oriented times three (AA&O x 3), cranial Nerves II-XII intact, normal light touch sensation and normal strength . +Dix-Halpike maneouver

### Assessment/Plan:

**Medical Decision Making:**
Labs reviewed: CBC, chemistry normal and Radiology results reviewed: CXR normal

41F with no PMH p/w vertigo and presyncope x2days with orthostatic hypotension

**Encounter Diagnoses**

| Code | Name | Primary? | Qualifier |
|------|------|----------|-----------|
| • 386.11 | Benign Paroxysmal Positional Vertigo | Yes | |
| Plan: | MECLIZINE 25 MG CAP | | |

**JULIE A. NISSIM, MD** Mon Jun 9, 2008  3:29 PM  Addended
The case was reviewed and discussed with AMY E COCINA, and I have personally evaluated and seen the patient. I agree with the history, examination, and plan of care. Patient seen and examined by me. Not hydrating enough, sightly orthostatic. Just had er visit.  Allowed to lie down in back room and felt better.  Dix hallpike manis pos. Meclizine initiated

**History Reviewed**

Date Reviewed:
**Last Reviewed on 6/6/08 by COCINA, AMY E**

Allergies as of 6/6/2008          Date Reviewed: **6/6/2008**  Reviewed By: **COCINA, AMY E**

| | Noted | Type | Reactions |
|---|-------|------|-----------|
| **Nkda (No Known Drug Allergies)** | 1/24/2008 | | Unknown |
| **Fish Product Derivatives** | 1/24/2008 | | C/o fish and shellfish allergy, Hives |
| **Dmdm Hydantoin** | 6/5/2008 | | Rash |

**Ordered Medications**

| | Disp | Refills | Start | End |
|---|------|---------|-------|-----|
| **Meclizine 25 mg Oral Cap** | 60 | 0 | 6/6/2008 | |
| Take one tab PO BID - Oral | | | | |

**Discontinued Medications**

| | Disp | Refills | Start | Discontinued |
|---|------|---------|-------|-------------|
| **Ibuprofen 400 mg Oral Tab** | 100 | 5 | 3/27/2008 | 6/6/2008 |
| 400mg orally every 6 hours as needed for pain - Oral | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **Loratadine 10 mg Oral Tab** | 30 | 5 | 3/27/2008 | 6/6/2008 |
| take 1 tablet (10 mg) by oral route once daily - Oral | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **Fluticasone 50 mcg/Actuation Nasl SpSn** | 1 | 5 | 3/31/2008 | 6/6/2008 |
| 1 spray into each nostril once daily - Nasal | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **ASTELIN 137 mcg Nasl SprA** | 1 | 3 | 6/5/2008 | 6/6/2008 |
| inhale 2 sprays in each nostril by intranasal route 2 times per day - Nasal | | | | |

Reason for Discontinue: **Patient discontinued**

## Medications Reviewed

User
SKLOOT, GWEN S., MD [102895]

Date and Time
6/5/2008 11:58 AM

## Visit Diagnoses and Associated Orders

**Benign Paroxysmal Positional Vertigo** [386.11] - Primary
Meclizine 25 mg Oral Cap [7495]

Dizziness [780.4A]

## Level Of Service

**OFFICE VISIT,EST,LEVL III (99213) [99213]**

## Follow-up and Disposition

Return in about 7 days (around 6/13/2008).

## Encounter Status

Electronically signed by AMY E. COCINA, MD on 6/6/08 at 1:54 PM

## Chart Cosign

Accepted By
**Julie Nissim, MD**

Accepted On
Mon Jun 9, 2008  3:31 PM

## All Flowsheet Templates (all recorded)

AMBULATORY VITALS FLOWSHEET Flowsheet

| Chemistry (Last result in 547 days) | | | | | | |
|---|---|---|---|---|---|---|
| Sodium | Potassium | Chloride | CO2 Total | Creatinine | Glucose | BUN |
| 142  (03/27/08) | 4.0  (03/27/08) | 106  (03/27/08) | 28.0  (03/27/08) | 0.7  (03/27/08) | 115  (03/27/08) | 12  (03/27/08) |
| **Chemistry Cont.** (Last result in 547 days) | | | | | | |
| Albumin | Bili Total | Calcium | Alk. Phos. | Protein Total | AST (SGOT) | ALT (SGPT) |
| 4.5  (10/24/07) | 0.4  (10/24/07) | 9.3  (03/27/08) | 63  (10/24/07) | 7.3  (10/24/07) | 22  (10/24/07) | 22  (10/24/07) |
| **Hematology** (Last result in 547 days) | | | | | | |
| WBC | RBC | | Hemoglobin | Hematocrit | | Platelet |
| 8.7  (06/05/08) | 4.15  (06/05/08) | | 12.9  (06/05/08) | 38.6  (06/05/08) | | 243  (06/05/08) |
| **Lipids** (Last result in 547 days) | | | | | | |
| TOT Cholesterol | Triglycerides | HDL Cholesterol | LDL Cholesterol | CHO/HDL Ratio | | LDL/HDL Ratio |
| 161  (01/24/08) | 172  (01/24/08) | 35  (01/24/08) | 92  (01/24/08) | 4.6  (01/24/08) | | 2.6  (01/24/08) |

## Coumadin Clinic Only

| Episodes |
|---|
| ** None ** |
| **Flowsheet Report** |
| ** Patient has no data for this report ** |
| **Flowsheet Report** |
| ** Patient has no data for this report ** |

This is a confidential document. Please dispose of it appropriately.

Page 6 of 17

# THE MOUNT SINAI MEDICAL CENTER
## Performance Planning and Review Program
### Probationary Employee Performance Appraisal Form
(New Employee/Newly Transferred)

| | |
|---|---|
| **Employee Name: Wen Liu** | **Position Title: Data Management Analyst** |
| **Department Name: Medicine** | **Pay Grade: 10   A     Life Number: 2005172** |
| **Department Number(Cost Center): 040** | **Appraisal Period: From: 9/25/2007  To:  12/25/07** |

te: Read the Guide to the Performance Planning and Review Program before completing this form. In addition to this ormance Appraisal Form, the **manager must also complete the online HRTS Probationary Performance Appraisal orting Form**. A Probationary Employee Performance Appraisal Form must be completed prior to the conclusion of the ployee's probationary period. If the probationary period ends prior to March 1st, a full format performance appraisal will also be uired at the end of that year.

ERALL PERFORMANCE EVALUATION - On the basis of actual performance (Section I), major work activities (Section II) the omplishments of core competency, rate employee's overall performance during the review period. This rating is not a numerical average of gs recorded in the appraisal; it should recognize that some activities and skills are more important than others. Excessive absences or ess should also be considered in determining this 'overall' rating.

### M – Meets expectations.
Performance of objectives and job responsibilities and
How the work was accomplished was at level expected.
Rating represents solid, competent performance.

**S – Significantly exceeds expectations.**
Performance in all areas far exceeded expectations, both in terms of performance of objectives/job responsibilities and how work was accomplished. Rating should be reserved for truly outstanding performance.

**E – Exceeds expectations.**
Performance of most objectives/job responsibilities exceeded expectations and others fully met expectations. Work performed very Effectively.

**N – Needs improvement.**
Overall performance generally falls somewhat below level expected. Needs some improvement to meet expectations, either in the performance of objectives or job responsibilities or in how the work is performed. An improvement plan should be developed and follow-up counseling scheduled within three months.

**U – Unacceptable performance.**
Overall performance significantly below level expected. Needs significant improvement to meet expectations, either in the performance of objectives or job responsibilities and/or in how work is performed. Requires immediate and sustained improvement. An improvement plan should be developed and follow-up counseling scheduled within three months.

GNATURES -
ployee: Your signature indicates that your appraiser has discussed this review with you and that you have read the completed form. Your gnature does not necessarily indicate agreement with what has been written. Use the space provided on last page of this form to comment on s appraisal and note any disagreements you may have with the evaluation.

mployee: _Wenlin_                                                    Date: _5/2/08_

ppraised by: _JUAN WICNIVESKY_                        Date: _2/12/08_

## PROBATIONARY RATING: ___



The Mount Sinai Medical Center    One Gustave L. Levy Place
New York, NY 10029-6574

The Mount Sinai Hospital
Mount Sinai School of Medicine

P.O CRAWLEY #11832
23 PcT
212 8606411

 

C-6-A-32

On November 13, 2008, Complainant contacted Division Representative and informed him that when she attempted to pick up her medical records from the clinic attached to Respondent's offices she was escorted of out the building by security.

Respondent's security guards told Complainant that as a fired ex-employee, she was no longer allowed in the building.

Later that same day, Complainant contacted P.O. Crawley  Badge Number 11832 at the 23rd Pct. to report the incident to the police

23rd Pct: 212-860-6411

RECEIVED

NOV 1 4 2008

UPPER MANHATTAN
REGIONAL OFFICE