UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Wen Liu*

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

*Mount Sinai School of Medicine*
*And Agents, et Al*
*(See attached page for additional defendant)*

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/7/11

PRO SE OFFICE

*Amended Complaint*
**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☑ Yes   ☐ No
*(check one)*

Case No: 09 Civ 9663 (RTS)(AJP)

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

✓   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
   ***NOTE:*** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

_____   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
   ***NOTE:*** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

✓   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
   ***NOTE:*** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

✓   New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

✓   New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

## I.   Parties in this complaint:

A.   List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name   _Wen Liu_
Street Address   _349 W  123st   #1F_
County, City   _New York,  Manhattan,  New York_
State & Zip Code   _NY 10027_
Telephone Number   _(646) 897-3589_

B.   List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant 2   Name   _Jeff  Cohen (Mount Sinai Medical Center, Labor Relation)_
Street Address   _19 East  98 street   Suite 2H_
County, City   _Manhattan,  New York_
State & Zip Code   _NY 10029_
Telephone Number   _(212) 241-8381_

C.   The address at which I sought employment or was employed by the defendant(s) is:

Defendant 3   Employer   _Juan Wisnivesky (Division of General Internal Medicine)_
Street Address   _One Gustave L levy place, Box 1087_
County, City   _Manhattan, New York_
State & Zip Code   _NY 10029_
Telephone Number   _(212) 241-6500  (Operator's phone number)_

_(See Attached  page for additional defendants)_

## II.   Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.   The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

[ ✓ ]   Failure to hire me.

[ ✓ ]   Termination of my employment.

[ ✓ ]   Failure to promote me.

[ ✓ ]   Failure to accommodate my disability.

[ ✓ ]   Unequal terms and conditions of my employment.

## Additional Dependents Name List

Defendant 4  Johnson, Karen (HR)
Mount Sinai Medical Center
Labor Relations
19 East 98 Street, Suite 2H
New York, NY 10029
Tel: 212-241-8381

Defendant 5  Jacqueline Arciniega
Primary Care Building
The Division of General Internal Medicine
Mount Sinai Hospital
Once Gustave L Levy Place, Box 1087
New York, NY 10029-6574
1470 Madison Avenue
Tel: 212-659-8551

Defendant 6  Vaishali Patel, MD
Mount Sinai Department of Emergency Medicine
Once Gustave L Levy Place, #Mb1220
Box 1149
New York, NY 10029
Tel: 212-241-0101

Defendant 7  Abiola A Fasina, MD
Mount Sinai School of Medicine
Mount Sinai Department of Emergency Medicine
Once Gustave L Levy Place, #504
Box 1149
New York, NY 10029
Tel: 212-241-6500(Operator's general number)

☑ ☑  Retaliation. *Medical Malpractice and Negligence and*

Other acts *(specify):* *Racial discrimination and employment discrimination*

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: *from December, 2007 to August, 25, 2008*  *Date(s)*

C.   I believe that defendant(s) *(check one)*:

☑   is still committing these acts against me.

_____   is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☑   race   _____   ☑   color   _____

☐   gender/sex   _____   ☐   religion_____

☑   national origin   _____

☐   age.   My date of birth is _____   *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☑   disability or perceived disability, *disc buldgs and termination(specify)*

E.   The facts of my case are as follow *(attach additional sheets as necessary)*:

*( See attached )*

_____

_____

_____

_____

_____

_____

_____

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   Exhaustion of Federal Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: *06/02/2009* _____ *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____✓_____    has not issued a Notice of Right to Sue letter.

              issued a Notice of Right to Sue letter, which I received on _07/12/2009_ *(Date)*.

      *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity
      Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.   N/A

      Since filing my charge of age discrimination with the Equal Employment Opportunity Commission
      regarding defendant's alleged discriminatory conduct *(check one)*:

      _____    60 days or more have elapsed.

      _____    less than 60 days have elapsed.

## IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive
orders, damages, and costs, as follows: Quantifiable monetary loss, Irreplaceable legal evidence
Treatment Rights loss, legal status loss, Earning loss, Financial loss,
Defamation loss, Retirement benefits emotional diseness and
*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*
punitive damages in the amount of $5000,000.00, Compensatory
damages (which the Judge deems just and proper.)
**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _06_ day of _July_, 20_11_.

Signature of Plaintiff    _Wen Liu_

Address                   _349 W 123 st   #1F_
                          _New York, NY 10027_

                          _____

Telephone Number          _(646) 897-3589_

Fax Number *(if you have one)*    _____

## Appendix

1. Explanation why I delay to submit the complaint package
2. Copy of "Notice of Right to Sue Letter" .
3. Copy of "Determination and Order after Investigation" from the New York State Division of Human Rights.
4. Additional defendants' name list in Mount Sinai School of Medicine.
5. Statement of the facts of my case
6 Emails and Reference from Mr. Jonathan D. Meyer
7. Appreciation emails between SAS technical support manager and me
8. Copy of  Evaluation Report from the Dr, Yong-Hong Xiao, MD
9. Copy of MRI Test Report from the Dr, Yong Ming Mao, MD, Neurologist and Epileptologist.
10. Copy of Medical Records from the Emergency Room, Mount Sinai Hospital.
11. Copy of First page of Evaluation from my former employer Juan Wisnivesky
12. Police information happened on Nov.13rd, 2008

## Explanation of why I delay to file my complaint

Dear Mr. Judge:

My name is Wen Liu. I am sorry that I am filing my complaint beyond the applicable period. There are three reasons for the delay:

1. English is not my native language, I have to try my best to write these facts to make the documentations to be formal. I do take some time to have all them done.
2. Because I have to do so many researches in the different law fields before I submit this complaint package.
3. I have visited many lawyers in different fields, but they don't have time to write down the story and compose the package, I have to take longer time.

Your granted extension and favorable consideration are much appreciated!

Wen Liu (Wenlin)

Wen Liu

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Wen Liu<br>349 West 123rd Street, Apt. #1F<br>New York, NY 10027 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2008-05618 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
Spencer H. Lewis, Jr.,
Director

7/7/09
*(Date Mailed)*

Enclosures(s)

cc: **MOUNT SINAI SCHOOL OF MEDICINE**
**Director of Labor Relations**
**One Gustave L. Levy Place, Box 1099**
**New York, NY 10029**
**Attn: Ellen J. Rosenthat Esq.**

# DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

# WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

# HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(312) 988-5522

New York State Bar Association
(800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

# HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

WEN LIU,
                              Complainant,

                    v.

MOUNT SINAI SCHOOL OF MEDICINE,
                              Respondent.

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10127589**

---

Federal Charge No. 16GA805618

I, Wen Liu, residing at 349 West 123rd Street, New York, NY, 10027, charge the above named respondent, whose address is Director of Labor Relations One Gustave L. Levy Place, Box 1097, New York, NY, 10029-6574 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of race/color, disability.

Date most recent or continuing discrimination took place is 8/15/2008.

The allegations are:

1.  I am Asian.  Because of this, I have been subject to unlawful discriminatory actions.

2.  On September 25, 2007, I was hired by Respondent as a Statistical Data Analyst. I believe that my work performance has been satisfactory.

3.  On or about December 2007, I received an employee evaluation of "Average" that I was uncomfortable with. Jacqueline Arciniega, (Hispanic) Clinical Data Manager did my employee evaluation even though she did not supervise me in any way.

4.  When I asked my actual Supervisor Juan Wisnisvesky(Hispanic), for an evaluation, he delayed in giving it to me. It was not until about April 2008, that I received a corrected evaluation score of "Excellent" from him.

5.    Since that time, I have been harassed unnecessarily by Respondent. I began to receive written warnings from Mr. Wisnisvesky.

6.    On June 5, 2008, while at work, I had a dizzy spell and fell down.  On June 6, 2008, I was still dizzy and I called into work and told them I would not be able to come into work. On or about June 12, 2008, I returned to work. When I returned to work I received another written warning.

7.    On August 15, 2008, I was terminated by Respondent. I believe that I was terminated because I disputed the evaluations and written warnings of my Hispanic coworkers and because of my dizzy spells.

8.    Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of race/color, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

_Wen Liu_
_____
Wen Liu


STATE OF NEW YORK ) SS:
COUNTY OF NEW YORK )

Wen Liu, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_Wen Liu_
_____
Wen Liu


Subscribed and sworn to
before me this 19th day
of August, 2008

_____
Signature of Notary Public

WILLIAM F. MARSHALL
Notary Public, State of New York
No. 01MA6066080
Qualified in New York County
My Commission Expires November 5, 20_0_9_

- 3 -

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 | PERSON FILING CHARGE:<br>Wen Liu<br>THIS PERSON (Check one):<br>Claims to be aggrieved [x]<br>Files on behalf of other(s) [ ] |
| TO:<br>Mount Sinai School of Medicine<br>Director of Labor Relations<br>One Gustave L. Levy Place, Box 1097<br>New York, NY 10029-6574 | DATE OF ALLEGED VIOLATION:<br>8/15/2008<br>PLACE OF ALLEGED VIOLATION:<br>New York County<br>EEOC CHARGE NUMBER:<br>16GA805618<br>FEPA CHARGE NUMBER:<br>10127589 |

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

      [X] Title VII of the Civil Rights Act of 1964
      [ ] The Age Discrimination in Employment Act of 1967 (ADEA)
      [ ] The Americans with Disabilities Act (ADA)

HAS BEEN RECEIVED BY: The New York State Division of Human Rights (FEP Agency) and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon expiration of any deferral requirements if this I a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the FEP Agency's final findings and orders.  These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the FEP Agency.  All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders.  In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the FEP Agency and the Commission.  This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final decision and order of the above named FEP Agency.  For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order.  If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission.

For further correspondence on this matter, please use the charge number(s) shown.

[ ] An Equal Pay Act investigation (29 U.S.C. §206(d)) will be conducted by the Commission concurrently with the FEP Agency's investigation of the charge.

[X] Enclosure: Copy of the Charge

BASIS FOR DISCRIMINATION:  Race/Color

CIRCUMSTANCES OF ALLEGED VIOLATION:
    SEE ATTACHED N.Y.S. DIVISION OF HUMAN RIGHTS COMPLAINT

DATE: August 19, 2008

                TYPED NAME OF AUTHORIZED EEOC OFFICIAL:
                Spencer H. Lewis, Jr.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112


## EEOC REVIEW PROCEDURE

If you want the EEOC to review the New York State Division of Human Rights final determination, because you are not satisfied with their final findings, you may request that the EEOC conduct a substantial weight review.  This request must be done in writing to the EEOC and within <u>fifteen (15) days</u> from the date you received the New York State Division of Human Rights final determination.  Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

Equal Employment Opportunity Commission
Attn: State and Local Unit
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

This address is for review purposes only.  Remember, if you have questions concerning the status of your case, you must contact the New York State Division of Human Rights.


Date: August 19, 2008

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

WEN LIU,
                              Complainant,

                    v.

MOUNT SINAI SCHOOL OF MEDICINE,
                              Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10127589

---

Federal Charge No. 16GA805618

On 8/19/2008, Wen Liu filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of race/color, disability in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The investigation revealed in September 2007, the Complainant began working for the Respondent as a Statistical Data Analyst. The Complainant was interviewed, hired, supervised and eventually terminated by an Associate Professor of Medicine and the Clinical Research Manager of the Division where she was formerly employed.

During the Complainant's employment with the Respondent, she was counseled and disciplined for performance related issues, including unsatisfactory performance, absenteeism and inappropriate conduct. In June 2008, the Complainant received a final warning for Excessive absenteeism, failure to follow instructions and insubordination. On August 15, 2008, the Respondent terminated the Complainant's employment.

The Respondent asserted that they had no knowledge of any disability suffered by the Complainant.  The investigation revealed that the Complainant did not inform the Respondent or provide any medical documentation in support of, or relating to her asserted medical condition.  The Complainant submitted doctor's notes stating she was seen or had an appointment, in connection with absences from work.  The Complainant neither requested nor was denied any accommodation for her asserted disability.

There were no examples of any similarly situated employee, receiving similar or more favorable treatment, provided by the Complainant.

The record does not support a nexus between the allegations of the verified complaint and the Complainant's race and or stated disability.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination.  A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458.  DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA).  Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC).  You have the right to request a review by EEOC of this action.  To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:       MAY 1 8 2009
         New York, New York

                        STATE DIVISION OF HUMAN RIGHTS


                  By:   _David E. Powell_____
                        David E. Powell
                        Regional Director



**NEW YORK STATE**
# DIVISION OF HUMAN RIGHTS
ONE FORDHAM PLAZA, FOURTH FLOOR
BRONX, NEW YORK 10458

**(718) 741-8400**
**Fax: (718) 741-3214**
**www.dhr.state.ny.us**

**DAVID A. PATERSON**
GOVERNOR

**GALEN D. KIRKLAND**
COMMISSIONER

Dear Division User:

In an effort to improve the quality of the services we offer, the Division of Human Rights is conducting a Customer Satisfaction Survey to measure the overall satisfaction of complainants, respondents, and counsel with the Division's process and personnel. You can participate in the Survey by visiting our website, at: www.dhr.state.ny.us/survey.html.

Please take a few moments and share your thoughts and ideas by completing our online Customer Satisfaction Survey. Your feedback is critical to ensuring that the Division continues to improve and operates in the most professional, fair, and efficient manner as possible. We thank you for helping in that effort.

Sincerely,

Galen D. Kirkland
Commissioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

WEN LIU,

                              Plaintiff,                    Civil Action No: 09-cv-9663

                   - Against -                             AMENDED COMPLAINT


MOUNT SINAI SCHOOL OF MEDICINE, AND

AGENTS                    Defendant.

--------------------------------------------------------X


## Nature of Case of Negligence and Medical Malpractice

### Duty to Protect

In the Human Resources Policy Manual of Mount Sinai "CODE OF CONDUCT AND
BUSINESS ETHICS";

Section B: Commitment to Fairness of "Employee Relations": Mount Sinai is
committed to the following:

- Equal opportunity for employment and advancement on the basis of ability and
  aptitude without regard to race, color, religion and national origin, age, gender,
  marital or military status, disability or sexual orientation, except where age,
  gender or physical status is a bona fide occupational qualification.
- Protection of the health and safety of employees in their work environment.
- Full compliance with all applicable laws regulating the employer-employee
  relationship; and
- Prompt investigation of allegations of all forms of illegal discrimination and
  sexual harassment.

Section C: "Occupational Safety":

- Both federal and state laws regarding the promotion of occupational safety and
  the avoidance of job related hazards are designed to ensure that work

environments are safe. Due regard and attention must be paid to those laws and regulations, as well as to institutional safety policies.

Depends on the policies above, my former employer, Mount Sinai has duty to protect my health and safety in the work environment.  But my they didn't obey those policies and Laws.

### Breach of Duty

First part:  Human Resources Policy Manual:

Mount Sinai In the Human Resources Policy Manual of Mount Sinai "CODE OF CONDUCT AND BUSINESS ETHICS";

Section B:  "Investigation of Violation":

- All reported violation of the law of institutional policies will be promptly investigated. Employees are required to cooperate fully in the investigation of alleged violation.

Section C: "Discipline for Violations", Disciplinary actions may be taken for:

- Authorization of or participation in actions that violate that law of institutional policies.
- Failure to report a violation or to cooperate fully in an investigation.
- Failure by a violator's supervisor(s) to detect and repo9rt a violation if such failure reflects inadequate supervision or lack of oversight.
- Deliberately making a false report of a violation.

In the "COMPLIANCE AND ETHICS":

Section B: "General Standard":

- Employees shall not use their positions, or confidential information gained therefrom, to their personal advantage.

In the "Safety":

- Reporting all accidents involving patients, visitors or staff.

I requested Juan Wisnivesky to fill up the "Accident Report" which happened on 06/05/2008, he didn't do it.

In the "Ethical Issues:

Section of "Code of Ethics and Business Conduct":

- The Mount Sinai Compliance Program helps to ensure we maintain our commitment to legal and ethical conduct by all employees and faculty.....

Section of "Reporting or Violations"

- Employees and faculty are required to come forward with any information regarding an actual or possible violation of the "Code of Ethics or Medical Center policy and cooperate fully in the investigation of any alleged violation. Reports should be made either in person, by telephone or in writing to your Supervisor or to Human Resources and Labor Relations -241-8381, Box 1097

In the Section of PTO:  "Paid time off":

- PTO may be used on a scheduled or unscheduled basis. Time off approved in advance by the supervisor in accordance with the department's policies is considered scheduled PTO time. Unscheduled PTO, such as personal emergencies or occasional days off due to illness, is handled in accordance with each department's existing attendance policies.  Supervisors may request medical documentation of unscheduled PTO days where an employee's attendance record shows excessive days, patterns of absence or other suspected abuse.

Section E: "PTO" related to Illness or Injury:

- When an employee is absent due to a documented illness or injury for eight or more consecutive calendar days, the entire absence, including that within the first seven calendar days, is charged to the Saving Account.
- Once all Saving Account and earned PTO allowance is depleted, any further absence is unpaid by maybe covered by non-occupational Short Term Disability. Employees are covered by the Short Term Disability Plan up to a maximum of twenty-six weeks from the first day of the medical leave.
- All employees who are disabled must file for short-term disability within two weeks of employee's Leave of Absence.

PTO for Staff Member on Disability:

For an employee on a disability LOA, including the disability portion of a FMLA (maternity) LOA:

- Savings Account time is first used until exhausted.
- Earned PTO time is then used until exhausted.
- Excess 2000 Vacation Carryover, if approved, is then used until exhausted.

If all the above time is exhausted and the Medical LOA continues, the employee maybe eligible for NYS Disability benefits.

Second part: Background of the case:

06/05/2008, about 4:10pm, while working with my former employer, Juan Wisnivesky in his office, sudden extreme dizziness caused my body lost control. When I tied to stand up from the chair, my arms and body repeatedly hit on the arm-rests and my head hit on the wall, with extreme and sharp neck pain, I fell on the floor with whole body shaking without stop. Juan Wisnivesky and Dr. Adler Rhodes used a chair with wheels to move me back to my office. In front of them, I fell from the chair to the floor again in my own office, but they locked the door, and left.

At the moment, my situation was very dangerous. I was lying on the floor, my neck and head was extremely painful, as hundreds of needles were suddenly hit into my neck and head; whole body was shaking without stop, hard to breathe in and out. Even though I closed my eyes, things were spinning around. I couldn't feel where my body was and where I was. I tried to open my eyes but only "black" in front of eyes; I didn't know what happened because it never happened to me before. I was very nervous and afraid of that I was dying. I tried to call for help. But I couldn't speak out and completely couldn't move myself to reach the phone on the desk to call for help. I lost consciousness.

Nobody called "911", nobody came to rescue me. I couldn't remember when the Clinical Data Manager, Jacqueline Arciniega came over to sit next to me. Eventually Juan Wisnivesky, Dr. Adler Rhodes, Jacqueline Arciniega and a security used a chair with wheels to send me to the Emergency Room in Mount Sinai hospital.

In the Emergency Room, I was half-unconsciousness. When I could open eyes, I saw Jacqueline Arciniega and Juan Wisnivesky walking around and talked to the doctors or nurses. I only heard that Jacqueline told somebody that I was lying on the floor. When a medical professional came to me and asked me what happened, I told this person and that I was dizzy, neck extremely painful, headache and fell in my boss's office. When other people asked me, I told them the same words. But, in the medical report on 06/05/2008, why didn't the doctors write down my words? Additionally, Jacqueline Arciniega and Juan Wisnivesky sent me to the Emergency Room, why didn't they tell the doctors and nurses "Reasons for visit" and the accident? In one words, there is no any record to describe my symptoms and accident. Eventually the doctors let me leave. I was so weak and dizzy to move back to my office. Dr. Alex Friedman asked me what happened, he sent me downstairs, and called a Taxi to see me leaving for home.

With extreme headache, strange neck sharp pain and body shaking, I went home and couldn't move any more. In the next morning, on 06/06/2008, those symptoms were still the same; when I opened my eyes, things were spinning around. I hardly spoke out to call for help. I didn't know where my cell phone was. Also, without clear instruction from the Emergency Room on 06/05/2008, I didn't know which clinic I could go for further check-up. I tried my best to call my sister in China for the instruction. She told me that I should check my neck. But I didn't know which clinic I should go for my neck symptoms? I called the Mount Sinai General Operator's number (212-241-6500), they told me to go to Emergency Room. However, I was too weak to wait there for a few hours for the diagnosis. I went to see the "Walk-in" doctors.

From 06/05/2008 to end of June, 2008, for the unknown dizziness, sharp pain and headache, I was so worry about myself and wanted to find out why I was so dizzy, where the sharp pain of my neck and headache are from and why the symptoms continued so long and didn't go away. In that time period, I was sent to Emergency Room three times and I personally visited "Walk-in" doctors twice. I lost consciousness three times in Mount Sinai work facility. I requested Juan Wisnivesky to fill up the "Accident Report", but he didn't. On the opposite side, Jacqueline Arciniega and Juan Wisnivesky both used various ways to stop or accuse on my process of seeking medical diagnosis and treatments. 0n 06/13/2008, when I visited the neurologist Dr. Alan Carver, he told me that "My dizziness and neck pain has no any relationship", I had to visit Dr.Yongming Mao on 06/19/2008. He referred me to have a MRI test right away.  On 06/27/2008, my MRI test results discovered serious disk bulges and disk herniation in my neck area. From the day I fell in Juan's office on 06/05/2008, until Dr. MRI finding on 06/27/2008, in a few weeks, with those sickness, I had to run to different clinics to find out where were my dizziness, strange neck pain and headache from; Meanwhile, every day, I also had to face to the stress and pressure and threaten from Juan Wisnivesky and Jacqueline Arciniega.  I lost so much weight in those days because they had made a very hostile work environment around me.   I was extremely depressed and sad and suffering for what had happened to me and what would happen to me.

On 08/14/2008, Juan Wisvesky and Jacqueline Arciniega issued a "Final Warning" to dismiss me from my position of Statistical Data Management Analyst in Mount Sinai. On 08/15/2008, my temporary working visa was withdrawn by Mount Sinai. On 08/28/2008, The Department of Labor Relations had a "Grievance Meeting "for me, but, without any further investigation, Labor Relations sustained the decision of dismiss.

### Factual causation (Direct Cause):

1.On 06/27/2008, the MRI test report showed that I had serious disk bulges and herniation in my neck area.

2.On 06/05/2008, I fell right in front of Juan Wisnivesky in his office, he saw my dizziness, body shaking without stop, head hit on the wall, and fell on the floor, eventually I crawled toward out of his office, and I even couldn't speak out. However, as my employer and a Pulmonary Doctor,   Juan Wisnivesky, sent me back to my office, locked the door and left, even didn't call "911" to rescue me right away; Jacqueline Arciniega, as a Clinical Data Manager in the Division of General Internal Medicine, a Master Degree holder in Public Health, came to my office and saw me lying on the floor, she was sitting on the chair without calling "911" as well.  Even though eventually both of them, Dr. Adler Rhodes and a security used a chair with wheels to send me to the Emergency Room.  My injury and other symptoms were not diagnosed promptly and exactly at the earliest time period after I just fell on the floor.  There are even no words regarding my symptoms and reason for visit in the medical paper on the date of 06/05/2008.  Later no, both of them used various excuses to harassed or stopped me seeking medical check-up and treatments. Additionally, in the night of 06/05/2008, I was discharged from the Emergency Room without any appropriate medical specialist referral.

From 06/05/2008, with serious dizziness, headache and sharp and strange neck pain, I had to run to different clinics to require Emergency appointments.

On 06/13/2008, I got an Emergency appointment to see the Neurologist in Mount Sinai, he said that "Dizziness and headache has no relationship", I had to find another doctor on 06/19/2008, and he referred me to do MRI right away. Until 06/27/2008, the MRI test report shows the finding of Disk bulges and Disk Herniation in my neck area. It confirmed my injury.

However, from 06/05/2008 to 06/27/2008, so many days already past, I had been so weak, so sick and so painful and so nervous about my symptoms, everyday I was like walking on a cotton floor. Who should be responsible for my everyday serious dizziness, headache, and neck pain and my injury? Who should be responsible for the time loss of my work and those fake documentations ("Warning Notices"), the hostile work environment and my worrying, depression, stress and final dismiss from my position in Mount Sinai?

I am asking Honor Judge:  Why didn't the doctors in the "Emergency Room" write down any record regarding my symptoms and "Reason for Visit" on the date of 06/05/2008. It's hard to imagine because it's a basic diagnosis for any medical professional to write down the first impression about a patient! Why didn't the Emergency Room doctors provide the medical specialist referral? It delayed my prompt and exact diagnosis. The consequences were so serious, grave and long-term influential. Did the doctors' behavior cause Medical Malpractice and Negligence? Or any of other violation of Laws?  Also, Juan Wisnivesky and Jacqueline Arciniega didn't send me to the Emergency Room right after I fell. Did their inhumanity and their merciless behavior cause Medical Malpractice and Negligence as well? Or any of other violation of Laws?

## Harms

1.  Loss of irreplaceable legal evidence: On June, 2010, I raised a case in the Workers' Compensation Board, (the case number is G0257611). However, Because there is no "fell on the floor" in the "Discharge Paper" and other prompt and exact diagnosis regarding dizziness, my neck pain and headache in the Emergency Room on the date of 06/05/2008, no medical specialist referral and no "Accident Report" regarding my fall.  Juan Wisnivesky, my former boss even completely denied the facts of my falling in his office; My former lawyer who represented my WCB case not only failed to work with my case properly, timely and effectively so that my case was closed on 03/11/2011, but also settled with Mount Sinai Insurance Company without my consent; because the case was closed, my physical therapy had to be stopped as well. I had not been treated since September, 2008 to June, 2010, now, without treatment, my injuries have always bothered me. I don't know what kind of future is waiting for me? Those consequences are definitely from that Mount Sinai professional medical malpractice and negligence.

2. Treatment Rights Loss: Because my neck pain and back pain came to be serious, on November 13, 2008, around 4:30pm, I went to Mount Sinai to see "Walk-in" doctors, and

then I was planning to go to "Medical Records" office to pick up my medical records. Because "Medical Records" office belongs to the Administrative office, it closes at 5:00pm, but "Walk-in" doctors works after 5:00pm. So I decided to go to "Medical Records" first. Unfortunately, in the hallway on the first floor, I met the Clinical Data Manager, Jacqueline Arciniaga in my former department. Only a few seconds later while I was waiting for collecting my medical records, a security guard came over to announce an order to escort me from the building immediately.  In that case, even though I paid for my medical materials, I only got partial of my medical records and had to leave without getting all of them. So, I didn't get any chance to go see "Walk-in" doctors.

In USA, The federal Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. 1395, which is a separate section of the more comprehensive 1985 Consolidated Omnibus Reconciliation Act (COBRA), mandates minimum standards for emergency care by hospital emergency rooms. The law requires that all patients who present with an emergency medical condition must receive treatment to the extent that their emergency condition is medically "stabilized," irrespective of their ability to pay for such treatment.

I am asking Honor Judge: How dare Mount Sinai Hospital escort me as a patient? Did they against the laws? If they "legally" escorted me, why didn't dare the Security provide his name and id number? If not "legally", who give this "order" to abuse or misuse the Laws? Who give them the "Rights" to abuse or misuse the Laws?  How can Mount Sinai Administrative abuse or misuse laws like this?

3. Legal Status Loss: On 08/14/2008, based on so fake documentation. ("Warning Notices"), I was dismissed from my position in Mount Sinai. On 08/15/2008, the International Personnel Office in Mount Sinai notified the United State Immigration Office to withdraw my 3-year H1-B working visa. Even though I told them I already requested a "Grievance Meeting" on 08/28/2008. I beg them to wait until the meeting finished. But they didn't stop the withdrawn process. As what I mentioned above, I felt the "threaten" from Juan Wisnivesky and Jacquline Arciniega, the "threaten" was "cancelling my legal visa" How dare they treat me like this after I was injured in the office?  They know that they can make me lose my legal status so that they can purposely cover all truth of my injury without taking any responsibility and consequence. However, how can Labor Relations in the Human Resources in Mount Sinai sustain the "dismiss" without any investigation?  Additionally, after I was dismissed, I was denied to apply Public Assistance and Unemployment Insurance.

4. Quantifiable monetary losses:  After I was dismissed on 08/15/2008 from Mount Sinai, I not only lost my legal status, but also lost higher income.  I have got two Master degrees from Columbia University and had been working in the Statistical field for about 8 years. Only with one interview, I was hired to work as a Statistical Data Management Analyst in Mount Sinai. Back then, I was the only one Statistical Data Management Analyst in the whole Division. I worked extremely hard and promptly to approach the daily goal. I not only finished all programming projects, but also taught my boss, Juan Wisnivesky each step in my project to improve his programming skills. However,  because of the injury, I lost my normal life in USA.  Without any legal status, I can't find any legal job, surviving

came to be extremely tough for me in New York. I couldn't afford any living expense and treatment for my injury. The physical therapy had to stop. Food, transportation, rental, various bills, huge debts, legal consultation, and preparing documentations spend all of my savings. Physically and emotionally, every day, I was very suffering and depressed and sad. Eventually, I had no money to pay for anything. On 12/31/2009, it was a snowing day. I was requested to move out from my apartment. I am alone in USA; I really had nowhere to go. About 2:30am on 01/01/2010, I was directed to go to Salvation Army, Franklyn Shelter. A few hours later, I had to get up to catch the schedule of breakfast. I was so exhausted and depressed, when I came out from the bathroom; I fell on the hard floor and twisted my right ankle. So, on 01/01/2010, I had to stay in the Emergency Room in the Lincoln Hospital for the whole day. In the end of February, 2010, I was transferred to another shelter and lived there until now. Currently, shelter already asked me to move out. Where should I go next? Where is my future? When can I go through this situation? I don't know.

5. Financial Loss: Since I lost my job in Mount Sinai, I can't pay back my huge debts, even though it was very hard to for me to do that, I never apply for the bankruptcy, I still wanted to pay back in full. However, I couldn't pay for anything anymore. In the end of February, 2010, those credit card companies and banks sold my information to collection companies. It caused a direct disaster of my financial reputation. Currently, I believe that my credit score is quite low, the influence has been caused long-term and irreplaceable and hardly to be estimated.

6. Defamation loss: I worked in Mount Sinai from September, 2007 to August, 2008. In those 11 months, I independently worked with all huge databases and programming projects and taught my boss everything what I had done. But all of my contribution was covered and destroyed when I was dismissed because of those "Written Warnings". Juan Wisnivesky definitely knew my capability and contribution to his projects and how hard I worked for him, even, in the morning of 06/13/2008, he still appraised that I had done a lot for his work. But, right in that afternoon, I was given the second "Written Warning". For covering the truth of my fall in the office, Juan Wisnivesky and Jacqueline Arciniega made those "fake documentation". Those written words or negative images not only have completely hurt my physical, mental or emotional well-being, but also have created a huge disaster for my career image and life in USA. They made defamation being occurred. Additionally, they used those databases and projects which I have created to publish their papers. My name is not one of author. Since 2008 to now (2011), I have been forced to leave my major for three years, who can be responsible for my loss in my career life in those three years? Who can be responsible for my career image and life in the future? For this dismiss, I have to rise a legal law sue, Can any other company hire me in the future based on those defamation? Additionally, how much can be enough to recover my loss from that defamation loss? I am so depressed and sad when I have been thrown into current hostile situation, and how long it will be, I don't know.

7. In my former complaint, I mentioned Mount Sinai as Racial Discrimination and Employment Discrimination. Since I started to work in the Division, Jacqueline Arciniega never treated equally with other employees and guided me anything on my job

but always used her "position" to create cold and hostile work environment around me. She didn't guide any or programming projects but she did my probation evaluation. When I had different opinion about that evaluation, she yelled at me in my office. I was told that she was very familiar with all policies in that "Human Resources Policy Manual", but after I fell in the office, she not only promptly covered the truth and stopped me to seek the medical check up, but actively created fake documentation and issued the various warnings to threaten me. She knew the policies so well to issue "Written Warnings" to me, but didn't know to fill up the "Accident Report"? At the same time, she directed other employees to create trouble with me so that she could damage my reputation. She only worked as a Clinical Data Manager in the Division of General Internal Medicine, but she used her "position" to threaten other people so that they couldn't tell the truth. Honor Judge, did her behavior cause racial discrimination and employment discrimination?

Additionally, I also have to mention another incident, my co-worker, Helen Cole, her father was sadly loss in the same day of my fall on 06/05/2008. I was so sad for that as well. But I didn't know that until I went back to the office on 06/13/2008. But, how did Jacqueline Arciniega treat her? On 06/06/2008, the next morning, Jacqueline Arciniega not only sent an email immediately to the whole Division to ask for the concern, but also sent emails promptly to follow up. Meanwhile, she collected money to buy flower for Helen. But what did she do to me at the same time? She and Juan Wisnivesky sent emails to Labor Relations in Mount Sinai to prepare to dismiss me. How can they treat me so different with another employee in the same Division? Except covering the truth of my fall to avoiding their responsibilities of my injuries, Honor Judge, should I strongly charge them Racial Discrimination and Employment Discrimination without any doubt!

From 08/15/2008 to now, three years already past. I have been struggling in different and extreme tough situation. Especially after moved to the shelters in 12/31/2008, physically and psychologically, everyday, I have had been unwilling to survive in a cursing world. Because many of the residents over there come from mental hospitals and jails, plus some of them have been long-term homeless. Their psychology status is not normal. Their lives' status is also not normal. As a higher educated and white –collar woman, I completely can't endure any dirty word even physical fighting around me. How different world is it with mine? How far is it from my life? Unfortunately I have had nowhere to go! I can feel that how painful and suffering of my heart and spirit any time. But, I can only hold my tears and pain inside. The worse situation is: I have to learn to physically protect myself to avoid being attacked. Where is my future? I don't know. But I have never been giving up but have been persisting to pursue my law suit because I want to bring my horrible story to the court and the Honor Judge, let you listen what kind of horrible story happened to me. I always feel so sad and suffering, depressed and helpless to write or think of this life experience. I want to ask the Honor Judge: How can Mount Sinai professionals treat me like this? If I am a Native American, can Mount Sinai professionals treat me like this? How can those PH.D and Master Degree's holders leave me, an injured employee alone without any emergency rescue? What were they waiting for? Waiting for me to die so that they don't need to take any responsibility? Do they still have any inhumanity? I know that Mount Sinai and their agencies are rich enough and strong enough to hire lawyers to against my charges. So what? Additionally, may be

those Mount Sinai professional have medical knowledge and experience, but, do they still remember their mission? Do they have career ethics and conscience as human beings? Comparing with them, I am only a poor and single foreign woman in USA. But I am self-respect, self-encouragement, and know to love lives, understanding humanity and protect my rights. Does America announce that it is a country with fairness, justice, humanity and human rights! I pray that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs as follows:  Quantifiable monetary losses and financial loss, various insurance benefits and retirement's benefits, legal evidence loss and defamation loss, emotional distress and punitive damages in the amount of $ 500, 000, and 00. Compensatory damages, (which the judge deems just and proper).Let's go to the court! Let's equally stand in front of the Honor Judges!


Sincerely,

Wen Liu
07/03/2011

**RE: reference**

From: "Meyer, Jonathan" <Jonathan.Meyer@mountsinai....    Add to Contacts    Mon, September 8, 2008 10:46:54 AM
To: lyx20031972@yahoo.com

Wen,

I'm glad to help you.  I think you weren't treated fairly at Sinai and you deserve fair treatment.

Good luck,

Jonathan

*Jonathan D. Meyer, MPH, ABD*
*Division of General Internal Medicine*
*Box 1087*
*Mount Sinai School of Medicine*
*1 Gustave L. Levy Place*
*New York, NY 10029*
*212-824-7506*

-----Original Message-----
**From:** wen liu [mailto:lyx20031972@yahoo.com]
**Sent:** Monday, September 08, 2008 1:32 PM
**To:** Meyer, Jonathan
**Subject:** Re: reference

Jonathan:
   Thank you! I will send this reference to recruiters right away.
   In such difficult situation. I know that you are real friend!

--- On **Mon, 9/8/08, Meyer, Jonathan** *<Jonathan.Meyer@mountsinai.org>*
wrote:

From: Meyer, Jonathan <Jonathan.Meyer@mountsinai.org>
Subject: reference
To: lyx20031972@yahoo.com
Date: Monday, September 8, 2008, 11:07 AM

Wen,

Here's the edited reference.

Good luck,

Jonathan

*Jonathan D. Meyer, MPH, ABD*
*Division of General Internal Medicine*
*Box 1087*
*Mount Sinai School of Medicine*
*1 Gustave L. Levy Place*
*New York, NY 10029*
*212-824-7506*

10/20/2009



**Division of General Internal Medicine**
*Center for Advanced Medicine*

The Mount Sinai School of Medicine
One Gustave L. Levy Place, Box 1087
New York, NY 10029
17 E. 102nd Street), 6 West
Tel: (212) 824-7505
Fax: (212) 824-2317

August 21, 2008

To Whom It May Concern:

This is a letter of reference for Wen Liu, a Data Management Analyst with the Division of General Internal Medicine, in the Department of Medicine, in The Mount Sinai School of Medicine. I have known Ms. Liu for nearly a year, when she joined our division in September 2007. I served as an advisor to Ms. Liu in her integration into the division, as she was new to the institution and the procedures here can be arcane.

Over the course of the year, I have seen her passion associated with both her job and her career, to the extent that she would need to be encouraged to end her work for the day, to return the next day to continue. She lives for database management, and is not content until she has completed the task at hand.

Moreover, she has devoted her career to becoming expert at SAS programming, and is part of a network of database professionals who counsels each other in the fine points of getting things done elegantly. Frankly, I wish I were as devoted to my professional pursuits as she is.

One of the areas in which I have advised her is in the area of proficiency in English. She is native Chinese, and has been in the U.S. roughly fifteen years, having spent all her time either working in, or studying database management. Consequently, her English is very specialized. I have encouraged her to broaden her reading, and was very pleased to learn that she had become a regular reader of the New York Times. The goal, in this case, is not to adopt the positions or values of the Times, but to become more familiar with the wider use of the language, and reading the newspaper helps her do this.

I can vouch for her character – she is honest, hard-working, professional, and passionate about her work. If I had the need for a database manager in my area, I would not hesitate hiring her. Feel free to contact me if you want further information of if you have questions: 212-824-7506.

Sincerely yours,

Jonathan D. Meyer
Finance Manager, Division of General Internal Medicine

## FW: [SAS 7610123864] follow up

From: "Liu, Wen L." <Wen.Liu2@mountsinai....   Add to Contacts
To: lyx20031972@yahoo.com

Wed, August 13, 2008 12:18:17 PM

-----Original Message-----
From: Maggie Underberg [mailto:Maggie.Underberg@sas.com]
Sent: Wednesday, August 13, 2008 2:59 PM
To: Liu, Wen L.
Subject: RE: [SAS 7610123864] follow up

Hi Wen,

Thank you so much for taking the time to let me know about the customer
service excellence that you received from John Brower.

Kind regards,

Maggie Underberg
Technical Support Manager - Windows Systems
www.sas.com

SAS(r) ... THE POWER TO KNOW(r)

-----Original Message-----
From: Liu, Wen L. [mailto:Wen.Liu2@mountsinai.org]
Sent: Wednesday, August 13, 2008 2:51 PM
To: Maggie Underberg
Subject: FW: [SAS 7610123864] follow up

Dear Maggie:
My name is Wen Liu. I am a statistical Data Analyst in the Division
of General Internal Medicine, The Mount Sinai Medical Center, New York.
I am writing you this letter to praise John in your group for his
very responsible attitude and significant support with highly repeated
problems of 'out of resources' when I was working with my huge datasets.

During these a few weeks, the same problem happened 27 times which
seriously deferred working process. From temporary work library to
permanent libraries, John helped me go through each steps to provide his
effective support, every a few days, he called in to follow up to see if
the problem completely resolved or if there was anything new so that he
can help with.
I am an experienced SAS user, and have been working in this field for
several years; I also worked with other SAS support representatives
before. But it's the first time for me to meet so responsible and very
professional one like John, I am really moved for his work. He really
helped me a lot when I had such "headache" problem not only because of
his complete skills but also professional attitude. He should have
wonder personality and very love his job! Otherwise, how can he catch
those points and keep them to a normal customer like me?
Work not only helps us survive but creates different pictures for the
people anywhere. John really does wonder work!

I am especially writing this letter to you to repay his efforts and
appreciate his help!

Thank you very much!

Wen Liu

08/13/08

-----Original Message-----
From: SAS Technical Support [mailto:support@sas.com]
Sent: Wednesday, August 13, 2008 10:56 AM
To: Liu, Wen L.
Subject: Re: [SAS 7610123864] follow up

::~:: NOTE: IF YOU REPLY, ALL TEXT FOLLOWING THIS LINE WILL BE IGNORED.


Thank you for submitting your question to SAS Technical Support.
It has been assigned tracking number

7610123864

Please include this tracking number EXACTLY as it appears
above in the subject line of all further correspondence with
Technical Support on this question.
A Technical Support consultant will respond to you within
24 hours (not including weekends and holidays).


--- Information You Provided ---
Name:      Wen Liu
Sitenum:   0001209023
Company:
Phone:     +1 (212) 824-7562
OS:
Product:   SAS Configuration and Troubleshooting Ut
Release:   9.1.3
---------------------------------


--- Your Problem Description ------

John:
   This is Wen Liu, the reference number is 7610118437.
   I called you last Friday afternoon and left a message as we discussed
before. I left for somewhere else after that, when I came back, it was
5:10pm. I didn't know if you called me or not.
   Following your instruction, I tested my programs for a few days. Now
the program is working now. It's a good news. I would like to let you
know.

   Thank you very much!

   P.S: My email address is right, please contact me if you like. Thank
you again!

   Wen


--- End of Problem Description ------

July 5, 2008

RE: Liu, Wen
DOB: 3/1/67

**Office Note:**

I have the pleasure of re-evaluating patient Liu, Wen in my office on 7/5/08 for acute exacerbation of neck pain with numbness of both hands

**HPI:** Patient Liu, Wen is a 41 year-old female who complains of persistent neck pain for several months with acute exacerbation for the past week and complains of moderate pain and difficulty with overhead activities, lowering her head down, sleeping at night, reading or working on the computer for more than 30 minutes and turning head sideways. MRI of cervical spine on 6/19/08 showed at C5-6 there is disc bulge with central disc protrusion impinging upon the thecal sac and to a lesser degree the cervical spinal cord creating moderate to severe central canal stenosis the neural foramen are patent. At C6-7 there si a disc bulge with a right foraminal protrusion there is mild right neural formianl narrowing the left neural foramen is patent. There is no central canal stenosis. Pain scale is 8-10/10. Patient takes Motrin/Tylenol with little relief

**Physical Examination**
**Range of Motion:**
Cervical: Flexion 40, Lateral bending Lt 20, Rt 20, Ext 15, Rotation 20 (In degrees).
Palpation: Moderate tenderness of bilateral cervical parapsinals.
**Neurological:** Alert and oriented x 3, Cranial Nerves: II-XII are intact.
Motor: Bilateral Upper Extremities: 4+/5.
Sensation is decreased to light touch and pin prick along bilateral C6-7 distribution.
DTR: decreased in bilateral biceps.
Clonus: None, Babinski: Downward Bilaterally, Cerebellar testing was intact.
Gait: Within Normal Limits.
Bilateral Spurling: Positive.  Bilateral Tinnel: Positive   Bilateral Phalen: Positive

**Impression:** Acute exacerbation of severe neck pain secondary to HNP.

**Treatment:** Continue PT twice a week for 4 weeks. Teach HEP

Sincerely,

Yong-Hong Xiao, M.D..

**Referring Provider 1**
YONGMING MAO  MD
132-52 41 AVE.
SUITE M1
Flushing, NY 11355

RE: LIU, WEN
Chart #: 2411599
Location: Harlem
Date of Service:06/19/08
Patient Phone #:(646) 897-3589

Gender: Female
DOB: 03/01/1967
Auth:
Mail: Y Fax:Y

Clinical data:  Neck pain.

## MRI OF THE CERVICAL SPINE (WITHOUT CONTRAST):

Multiplanar multisequence images of the cervical spine were obtained.  Sagittal images were obtained using T1 and T2 weighted factors.  Axial images were obtained using gradient echo technique.

The atlantoaxial joint has mild degenerative change.  There is no fracture or dislocation.  There is straightening of cervical spine lordosis consistent with muscle spasm.  The vertebral marrow signal is normal in signal intensity.  The paraspinal musculature is normal in appearance.

C2-3:  There is no bulge or protrusion.  There is no evidence of neural foraminal or central canal stenosis.

C3-4:  There is a disc bulge impinging upon the anterior aspect of the thecal sac creating mild central canal stenosis.  The neural foramen are patent.

C4-5:  There is a mild disc bulge impinging upon the anterior aspect of the thecal sac creating mild central canal stenosis.  The neural foramen are patent.

C5-6:  There is a disc bulge with central disc protrusion impinging upon the thecal sac and to a lesser degree the cervical spinal cord creating moderate to severe central canal stenosis.  The neural foramen are patent.

Page 1 of 2

*D/w pt*

*XR*

*6/26/08*

*www.DoshiDiagnostic.com*

RE: LIU, WEN
Chart #: **2411599**
Location: Harlem
Date of Service:06/19/08
Patient Phone #:(646) 897-3589

Gender: Female
DOB: 03/01/1967
Auth:
Mail: Y Fax:Y

## MRI OF THE CERVICAL SPINE (WITHOUT CONTRAST):

C6-7: There is a disc bulge with a right foraminal protrusion. There is mild right neural foraminal narrowing. The left neural foramen is patent. There is no central canal stenosis.

C7-T1: There is no bulge or protrusion. There is no evidence of neural foraminal or central canal stenosis.

### *IMPRESSION:*

**1. AT C5-6, THERE IS A DISC BULGE WITH CENTRAL DISC PROTRUSION IMPINGING UPON THE THECAL SAC AND TO A LESSER DEGREE THE CERVICAL SPINAL CORD CREATING MODERATE TO SEVERE CENTRAL CANAL STENOSIS. THE NEURAL FORAMEN ARE PATENT.**

**2. AT C6-7, THERE IS A DISC BULGE WITH A RIGHT FORAMINAL PROTRUSION. THERE IS MILD RIGHT NEURAL FORAMINAL NARROWING. THE LEFT NEURAL FORAMEN IS PATENT. THERE IS NO CENTRAL CANAL STENOSIS.**

Thank you for your referral.

*Narayan Paruchuri MD*
Document electronically signed
H/-IT-SN

Page 2 of 2

*www.DoshiDiagnostic.com*



**Wen Liu**
**6/9/2008 5:20 PM   Office Visit**

MRN: **2447724**

Description: **41 year old female**
Provider: **MICHELLE A. ROACH, MD**
Department: **Ima Firm D**

---

**Encounter Visit ID**

Visit ID
**44686628**

**Patient PCP Information**

Provider
JESSICA T. PETROS, MD

PCP Type
General

**Visit Insurance**

| Payor | Plan | Subscriber | Member ID |
|---|---|---|---|
| UNITED HEALTH CARE | UNITED HEALTH CARE EMPLOYEE | LIU,WEN | 854952876 |

**Reason for Visit**

Other                     dizzy spells

**Vitals - Last Recorded**

BP
107/59

Pulse
76

Vitals History Recorded

**Pain Information (Last Filed)**

| Score | Location | Comments | Edu? |
|---|---|---|---|
| | | fingerstick done result 98 | |

**Progress Notes**

**MICHELLE A. ROACH, MD** Mon Jun 9, 2008  5:58 PM  Signed
SUBJECTIVE:  Wen Liu is a(an) 41 y.o. female who presents with a chief complaint of dizziness for the past a few days.  She describes the dizziness as a spinning sensation, a lightheaded sensation, falling, which are improved somewhat.  The following actions precipitate or aggravate the dizziness: rapid head movements, rising from a supine position.

Associated symptoms:none.

Review of Systems:

General:       no fever, chills, night sweats, anorexia, malaise, fatigue, or weight change
HEENT:        no nasal congestion, rhinorrhea, sore throat, or facial pain
Gastrointestinal:  no nausea, vomiting, diarrhea, constipation, or abdominal pain
Hematologic:   no unexplained bleeding or bruising

OBJECTIVE:  Ms. Liu appears in no apparent distress.

ASSESSMENT/Plan:  BPPV
Cont meclizine 25mg
ENT consult

This is a confidential document. Please dispose of it appropriately.

Consider vestibular rehab if no improvement
Head CT tonight or tomorrow

Minimize caffeine and alcohol.
Return to clinic in with persistent problems .

**ANA T. BLOHM, MD** Mon Jun 9, 2008  7:07 PM  Addended
The case was reviewed and discussed with MICHELLE A ROACH, and I have personally evaluated and
seen the patient. I agree with the history, examination, and plan of care.

## History Reviewed

Date Reviewed:
**Last Reviewed on 6/6/08 by COCINA, AMY E**

Date Reviewed: **6/6/2008**   Reviewed By: **COCINA, AMY E**

## Allergies as of 6/9/2008

| | Noted | Type | Reactions |
|---|---|---|---|
| **Nkda (No Known Drug Allergies)** | 1/24/2008 | | Unknown |
| **Fish Product Derivatives** | 1/24/2008 | | C/o fish and shellfish allergy, Hives |
| **Dmdm Hydantoin** | 6/5/2008 | | Rash |

## Medications Reviewed

| User | Date and Time |
|---|---|
| SKLOOT, GWEN S., MD [102895] | 6/5/2008 11:58 AM |

## Visit Diagnoses and Associated Orders

**Benign Paroxysmal Positional Vertigo** [386.11]  - Primary
  CONSULT TO ENT [9008]
  CT HEAD W/O CONTRAST [70450]

**ORDERS WITHOUT AN ASSOCIATED DIAGNOSIS**
  BLOOD GAS/ELEC PROF-ART (POCT) [100015]

## Level Of Service

**OFFICE VISIT,EST,LEVL II (99212) [99212]**

## Encounter Status

Electronically signed by MICHELLE A. ROACH, MD on 6/9/08 at 6:52 PM

## Chart Cosign

| Accepted By | Accepted On |
|---|---|
| **Ana Blohm, MD** | Mon Jun 9, 2008  7:07 PM |

## All Flowsheet Templates (all recorded)

AMBULATORY VITALS FLOWSHEET Flowsheet

## Letters

**ROACH, MICHELLE on 6/9/2008**          Open

| Chemistry (Last result in 547 days) | | | | | | |
|---|---|---|---|---|---|---|
| Sodium | Potassium | Chloride | CO2 Total | Creatinine | Glucose | BUN |
| 142  (03/27/08) | 4.0  (03/27/08) | 106  (03/27/08) | 28.0  (03/27/08) | 0.7  (03/27/08) | 115  (03/27/08) | 12  (03/27/08) |

| Chemistry Cont. (Last result in 547 days) | | | | | | |
|---|---|---|---|---|---|---|
| Albumin | Bili Total | Calcium | Alk. Phos. | Protein Total | AST (SGOT) | ALT (SGPT) |
| 4.5  (10/24/07) | 0.4  (10/24/07) | 9.3  (03/27/08) | 63  (10/24/07) | 7.3  (10/24/07) | 22  (10/24/07) | 22  (10/24/07) |

| Hematology (Last result in 547 days) | | | | | |
|---|---|---|---|---|---|
| WBC | RBC | Hemoglobin | Hematocrit | | Platelet |
| 8.7  (06/05/08) | 4.15  (06/05/08) | 12.9  (06/05/08) | 38.6  (06/05/08) | | 243  (06/05/08) |

| Lipids (Last result in 547 days) | | | | | |
|---|---|---|---|---|---|
| TOT Cholesterol | Triglycerides | HDL Cholesterol | LDL Cholesterol | CHO/HDL Ratio | LDL/HDL Ratio |
| 161  (01/24/08) | 172  (01/24/08) | 35  (01/24/08) | 92  (01/24/08) | 4.6  (01/24/08) | 2.6  (01/24/08) |

**Coumadin Clinic Only**

| Episodes |
|---|
| ** None ** |

| Flowsheet Report |
|---|
| ** Patient has no data for this report ** |

| Flowsheet Report |
|---|
| ** Patient has no data for this report ** |



## Wen Liu

**6/6/2008 12:20 PM   Office Visit**
MRN: 2447724

Description: **41 year old female**
Provider: **AMY E. COCINA, MD**
Department: **Ima Firm B**

**Encounter Visit ID**

Visit ID
**44683056**

**Patient PCP Information**

| Provider | PCP Type |
|---|---|
| JESSICA T. PETROS, MD | General |

**Visit Insurance**

| Payor | Plan | Subscriber | Member ID |
|---|---|---|---|
| UNITED HEALTH CARE | UNITED HEALTH CARE EMPLOYEE | LIU,WEN | 854952876 |

**Reason for Visit**

Other        PT STS STILL FEELING WEAK TIRED AND DIZZY. PT STS HAD
A FALL YESTERDAY DUE TO DIZZINESS

**Vitals - Last Recorded**

| BP | Pulse | SpO2 |
|---|---|---|
| 98/62 | 83 | 97% |

Vitals History Recorded

**Progress Notes**

**AMY E. COCINA, MD**  Fri Jun 6, 2008  1:54 PM  Signed
**FOLLOW UP:**
Date: 6/6/2008

**Subjective:**

**Informant:** Patient

**Chief Complaint:** dizzy, fall

**HPI:** Wen Liu presents to Internal Medicine Associate for follow up of medical conditions as listed and updated below:

**Patient Active Problem List**

| Diagnoses | Date Noted |
|---|---|
| | 06/04/2008 |
| • Cough [786.2] | 05/30/2008 |
| • Eczema [692.9BV] | 01/24/2008 |
| • Anxiety [300.00E] | 01/24/2008 |
| • LBP (Low Back Pain) [724.2AF] | |

41F with no PMH p/w dizziness since yesterday. Yesterday, felt dizzy, which means vertigo plus blackness before eyes. Was in her office, got up, fell to floor, no LOC, went to ED, where c/o same symptoms but stated had mild mental status change (grogginess) during event and palpitations. Today, no palpitations, but is still weak, dizzy (not currently spinning, more like no energy), numbness on forehead, pain when presses on temples, denies N/V currently but was nauseated on way home from ED yesterday. Last meal one hour ago, eating didn't help yesterday or today. No menstuating, no stress at yesterday. One hour after, was ok, but then 2nd hour, fell home. Had PFTs yesterday for cough for several months. One hour after, was ok, but then 2nd hour, felt dizzy and sweating and had to lie down. The fall was 4-5 hours after the PFTs. Has lower abd pain.

**Review Of Systems:**
Complete ROS performed. All systems negative except as detailed in HPI or below.

**PMH:** history reviewed
Patient has a past medical history of Anxiety (1/24/2008), LBP (Low Back Pain) (1/24/2008), Eczema, Cough, PPD Positive, and Allergic Rhinitis.

**Family History:** reviewed and without changes.
Patient family history includes Asthma in her sister; Cancer in her father and maternal grandmother; Diabetes in her mother; Heart in her mother; Hypertension in her mother; and Lipids in her brother.

**Social History:** Reviewed and without changes.
She reports that she has never used tobacco.  She reports that she does not currently engage in sexual activity.  She reports that she does not currently drink alcohol or use illicit drugs.

**Medications - Previous to this Encounter**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • ASTELIN 137 mcg Nasl SprA | inhale 2 sprays in each nostril by intranasal route 2 times per day | 1 | 3 |
| • Fluticasone 50 mcg/Actuation Nasl SpSn | 1 spray into each nostril once daily | 1 | 5 |
| • Loratadine 10 mg Oral Tab | take 1 tablet (10 mg) by oral route once daily | 30 | 5 |
| • Ibuprofen 400 mg Oral Tab | 400mg orally every 6 hours as needed for pain | 100 | 5 |

**Health Maintenance and Immunization:**

There is no immunization history on file for this patient.
Health Maintenance: deferred

**Objective:**

**Multi-System Exam:**
BP 98/62 | Pulse 83
There is no height or weight on file for this encounter.

**Physical Exam:**

Constitutional: well developed/well nourished and appears uncomfortable

Eyes: pupil equally round and reactive to light (PERRL)  bilaterally, extra-ocular muscle intact (EOMI) bilaterally and EOM test makes her nauseous
Cardiovascular: nondisplaced place of maximal impulse (PMI), normal s1, s2 , regular rhythm and no murmurs
Respiratory: clear to auscultation bilaterally, no rales, no wheezing and no accessory muscle use
Gastrointestinal: normal bowel sounds and lower abd pain on palpation
Neuro: alert, awake & oriented times three (AA&O x 3), cranial Nerves II-XII intact, normal light touch sensation and normal strength . +Dix-Halpike maneouver

## Assessment/Plan:

**Medical Decision Making:**
Labs reviewed: CBC, chemistry normal and Radiology results reviewed: CXR normal

41F with no PMH p/w vertigo and presyncope x2days with orthostatic hypotension
**Encounter Diagnoses**

| Code | Name | | Primary? | Qualifier |
|------|------|--|----------|-----------|
| • 386.11 | Benign Paroxysmal Positional Vertigo | | Yes | |
| *Plan:* | *MECLIZINE 25 MG CAP* | | | |

**JULIE A. NISSIM, MD**  Mon Jun 9, 2008  3:29 PM  Addended
The case was reviewed and discussed with AMY E COCINA, and I have personally evaluated and seen the patient. I agree with the history, examination, and plan of care. Patient seen and examined by me. Not hydrating enough, sightly orthostatic. Just had er visit.  Allowed to lie down in back room and felt better.  Dix hallpike manis pos. Meclizine initiated

---

**History Reviewed**
    Date Reviewed:
    **Last Reviewed on 6/6/08 by COCINA, AMY E**

Date Reviewed: **6/6/2008**  Reviewed By: **COCINA, AMY E**

**Allergies as of 6/6/2008**

| | Noted | Type | Reactions |
|--|-------|------|-----------|
| **Nkda (No Known Drug Allergies)** | 1/24/2008 | | Unknown |
| **Fish Product Derivatives** | 1/24/2008 | | C/o fish and shellfish allergy, Hives |
| **Dmdm Hydantoin** | 6/5/2008 | | Rash |

**Ordered Medications**

| | Disp | Refills | Start | End |
|--|------|---------|-------|-----|
| **Meclizine 25 mg Oral Cap** | 60 | 0 | 6/6/2008 | |
| Take one tab PO BID - Oral | | | | |

**Discontinued Medications**

| | Disp | Refills | Start | Discontinued |
|--|------|---------|-------|--------------|
| **Ibuprofen 400 mg Oral Tab** | 100 | 5 | 3/27/2008 | 6/6/2008 |
| 400mg orally every 6 hours as needed for pain - Oral | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **Loratadine 10 mg Oral Tab** | 30 | 5 | 3/27/2008 | 6/6/2008 |
| take 1 tablet (10 mg) by oral route once daily - Oral | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **Fluticasone 50 mcg/Actuation Nasl SpSn** | 1 | 5 | 3/31/2008 | 6/6/2008 |
| 1 spray into each nostril once daily - Nasal | | | | |
| Reason for Discontinue: **Patient discontinued** | | | | |
| **ASTELIN 137 mcg Nasl SprA** | 1 | 3 | 6/5/2008 | 6/6/2008 |
| inhale 2 sprays in each nostril by intranasal route 2 times per day - Nasal | | | | |

Reason for Discontinue: **Patient discontinued**

## Medications Reviewed

| User | Date and Time |
| --- | --- |
| SKLOOT, GWEN S., MD [102895] | 6/5/2008 11:58 AM |

## Visit Diagnoses and Associated Orders

**Benign Paroxysmal Positional Vertigo** [386.11]  - Primary
  Meclizine 25 mg Oral Cap [7495]

Dizziness  [780.4A]

## Level Of Service

**OFFICE VISIT,EST,LEVL III (99213)** [99213]

## Follow-up and Disposition

Return in about 7 days (around 6/13/2008).

## Encounter Status

Electronically signed by AMY E. COCINA, MD on 6/6/08 at 1:54 PM

## Chart Cosign

| Accepted By | Accepted On |
| --- | --- |
| **Julie Nissim, MD** | Mon Jun 9, 2008  3:31 PM |

## All Flowsheet Templates (all recorded)

AMBULATORY VITALS FLOWSHEET Flowsheet

| Chemistry (Last result in 547 days) | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Sodium | Potassium | Chloride | CO2 Total | Creatinine | Glucose | BUN |
| 142  (03/27/08) | 4.0  (03/27/08) | 106  (03/27/08) | 28.0  (03/27/08) | 0.7  (03/27/08) | 115  (03/27/08) | 12  (03/27/08) |

| Chemistry Cont. (Last result in 547 days) | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Albumin | Bili Total | Calcium | Alk. Phos. | Protein Total | AST (SGOT) | ALT (SGPT) |
| 4.5  (10/24/07) | 0.4  (10/24/07) | 9.3  (03/27/08) | 63  (10/24/07) | 7.3  (10/24/07) | 22  (10/24/07) | 22  (10/24/07) |

| Hematology (Last result in 547 days) | | | | |
| --- | --- | --- | --- | --- |
| WBC | RBC | Hemoglobin | Hematocrit | Platelet |
| 8.7  (06/05/08) | 4.15  (06/05/08) | 12.9  (06/05/08) | 38.6  (06/05/08) | 243  (06/05/08) |

| Lipids (Last result in 547 days) | | | | | |
| --- | --- | --- | --- | --- | --- |
| TOT Cholesterol | Triglycerides | HDL Cholesterol | LDL Cholesterol | CHO/HDL Ratio | LDL/HDL Ratio |
| 161  (01/24/08) | 172  (01/24/08) | 35  (01/24/08) | 92  (01/24/08) | 4.6  (01/24/08) | 2.6  (01/24/08) |

## Coumadin Clinic Only

| Episodes |
| --- |
| ** None ** |

| Flowsheet Report |
| --- |
| ** Patient has no data for this report ** |

| Flowsheet Report |
| --- |
| ** Patient has no data for this report ** |

# THE MOUNT SINAI MEDICAL CENTER
## Performance Planning and Review Program
### Probationary Employee Performance Appraisal Form
(New Employee/Newly Transferred)

| | |
|---|---|
| Employee Name: Wen Liu | Position Title: Data Management Analyst |
| Department Name: Medicine | Pay Grade: 10   A      Life Number: 2005172 |
| Department Number(Cost Center): 040 | Appraisal Period: From: 9/25/2007 To: 12/25/07 |

Read the Guide to the Performance Planning and Review Program before completing this form. In addition to this Performance Appraisal Form, the **manager must also complete the online HRTS Probationary Performance Appraisal rating Form**. A Probationary Employee Performance Appraisal Form must be completed prior to the conclusion of the employee's probationary period. If the probationary period ends prior to March 1st, a full format performance appraisal will also be required at the end of that year.

**OVERALL PERFORMANCE EVALUATION** - On the basis of actual performance (Section I), major work activities (Section II) the accomplishments of core competency, rate employee's overall performance during the review period. This rating is not a numerical average of the ratings recorded in the appraisal; it should recognize that some activities and skills are more important than others. Excessive absences or lateness should also be considered in determining this 'overall' rating.

### M - Meets expectations.
Performance of objectives and job responsibilities and
How the work was accomplished was at level expected.
Rating represents solid, competent performance.

**S - Significantly exceeds expectations.**
Performance in all areas far exceeded expectations, both in terms of performance of objectives/job responsibilities and how work was accomplished. Rating should be reserved for truly outstanding performance.

**E - Exceeds expectations.**
Performance of most objectives/job responsibilities exceeded expectations and others fully met expectations. Work performed very Effectively.

### N - Needs improvement.
Overall performance generally falls somewhat below level expected. Needs some improvement to meet expectations, either in the performance of objectives or job responsibilities or in how the work is performed. An improvement plan should be developed and follow-up counseling scheduled within three months.

### U - Unacceptable performance.
Overall performance significantly below level expected. Needs significant improvement to meet expectations, either in the performance of objectives or job responsibilities and/or in how work is performed. Requires immediate and sustained improvement. An improvement plan should be developed and follow-up counseling scheduled within three months.

**SIGNATURES -**
Employee: Your signature indicates that your appraiser has discussed this review with you and that you have read the completed form. Your signature does not necessarily indicate agreement with what has been written. Use the space provided on last page of this form to comment on the appraisal and note any disagreements you may have with the evaluation.

Employee: _Wenlin_                                    Date: 5/2/08

Appraised by: _JUAN WISNIVESKY_                       Date: 2/12/08

**PROBATIONARY RATING:** ____



The Mount Sinai Medical Center      One Gustave L. Levy Place
                                    New York, NY 10029-6574

The Mount Sinai Hospital
Mount Sinai School of Medicine

P.O CRAWLEY #11832

23 PcT
212 860 6411

 

C-6-A-32

On November 13, 2008, Complainant contacted Division Representative and informed him that when she attempted to pick up her medical records from the clinic attached to Respondent's offices she was escorted of out the building by security.

Respondent's security guards told Complainant that as a fired ex-employee, she was no longer allowed in the building.

Later that same day, Complainant contacted P.O. Crawley  Badge Number 11832 at the 23rd Pct. to report the incident to the police.

23rd Pct: 212-860-6411

RECEIVED

NOV 1 4 2008

UPPER MANHATTAN
REGIONAL OFFICE



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X

WEN LIU,

          Plaintiff,

      -Against-

MOUNT SINAI SHCOOL OF MEDICINE
AND AGENTS,

          Defendants.

---------------------------------------------------X

09Civ.9663 (RJS) (AJP)
DECLARATION IN SUPPORT

Wen Liu hereby declares that the following is true and correct under the penalties of perjury:

    1. I am plaintiff appearing Pro Se in the above captioned action and I respectfully submit this Declaration in support of my application for an Order extending my time to commence the within action and deem my action timely commenced. As set forth below, any default which resulted in the action not being timely commenced is excusable. Further, my claims against Mt. Sinai are meritorious as I was a victim of disparate and discriminatory treatment on the basis of my disability, race and national origin. Finally, since the filing of the action was only few days late, there is no prejudice to Defendant.

    2. The default in filing the Complaint on time is excusable because I relied on the advice of the Pro Se Office. On the last day of October 12, 2009, I went to the Pro Se office with my lawsuit documentations; I was ready to file the lawsuit. But the clerk in the front desk gave me some forms. After a quick glance, I told her that I didn't know how to fill up those forms and maybe she could help me at some points. Even though I also told her that date of October 12th, 2009 was the last day to file my lawsuit, she told me that I could bring home, complete the forms and bring back later. I don't know her name; she was a shorter, middle-aged woman. Another taller lady was next to her when she and I had this conversation. I didn't have other options but rely on her advice of Pro Se office, I definitely didn't know that I received faulty advice and having relied on it so that the detriment is the Pro Se office would possibly dismiss my case because of them. Particularly, I was relying on those advise of the Pro Se office given me limited experience with the Courts and that I was from China and therefore, are not that familiar with the America's court system. If the Pro Se office had told me that I must return the form by a date certain, I would have done so. Since they told me that it was okay for me to file it late, I complied with their advice.

    I took those forms home and read carefully but still didn't know how to finish them. Finally two of my friends voluntarily filled up those forms for me.

    3. My claims against Defendants are meritorious. I am confident that at trial of this action I will be able to show that I was treated unfairly and were discriminated against, and that my discharge was pretextual, based on my disability, race and national origin from my former employer. I am confident to establish the merits of my case at trial.

    4. From September, 2007 to August 15, 2008. I worked as a Statistical Data Analyst in the Division of General Internal Medicine, Mount Sinai Medical Center. During those 11 months, Mt. Sinai and agents failed to accommodate me for my disability, refused to afford me the opportunity to seek treatment and discharged me when I complained about its failure to accommodate my disability.

    5. On June 5, 2008, because of sudden dizziness, I fell down in my boss's office, with sudden sharp neck pain and headache, my whole body lost control with shaking and thrilling, I was crawling on the floor unable to speak out. My supervisor at Mt. Sinai and another doctor moved me back to my office and left

me alone with my door locked behind them without seeking emergency medical treatment for me immediately. I heard that my boss deriding my accident. Later, when I requested my supervisor to complete an Accident Report, he failed and refused to do so.

6. Since that incident, I sought medical evaluation and was diagnosed that I had serious bulges in my neck.

7. Thereafter, I had sought treatment for my illness. Notwithstanding Mt. Sinai's knowledge of my medical conditions, it refused to afford me the opportunity to treat my illness. Thereafter, it terminated me when I complained about Mt. Sinai's unfair and discriminatory treatment of me.

8. There is no prejudice to Defendant as the filing of the Complaint was only a matter of days late. I did not sit on my rights, but I was diligently seeking legal representation. After not having been able to find an attorney willing to take on my case because of my indigent status, I had to precede Pro Se. I relied on the advice of the Pro Se office in all the filing process. . I am a poor immigrant with little familiarity with the US judicial system as opposed to Defendant, a big hospital system with teams of attorneys advising it of its rights.

9. I have been told that America is country with fairness with full respect of human rights and justice. I have ample evidence to demonstrate to the Court that Defendant's work environment was hostile, and that I was unfairly and discriminatorily treated by Defendant. Moreover, evidence will show that Defendant retaliated against me by terminating my employment after I complained about its failure to provide me reasonable accommodation for my disability.

10. I come to the Court today to seek redress for the wrongs that I suffered. In the interest of justice and equity and for the above reasons, I respectfully request that the Court deem the Complaint to be timely filed.

Dated: New York, New York
December 28, 2009

_Wen Liu_
Wen Liu

I would like to amended my original documentation to the pro se office for the further complaint information. Please let me know when I can come over to submit the "Amended materials" to replace the original package.