UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 09 Civ. 9663 (RJS)

WEN LIU,

Plaintiff,

VERSUS

MOUNT SINAI SCHOOL OF MEDICINE, *et al.*,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-12-13

OPINION AFTER EVIDENTIARY HEARING
March 11, 2013

RICHARD J. SULLIVAN, District Judge.

Plaintiff Wen Liu, proceeding *pro se*, brings this action against her former employer, Mount Sinai Hospital, and several of its employees pursuant to federal, state, and local civil rights laws, alleging wrongful termination on the basis of race and disability, as well as claims for negligence and medical malpractice under New York state law. The Court previously dismissed Plaintiff's negligence and malpractice claims. (Doc. No. 56.) For the reasons set forth below, which draw heavily on evidence introduced at a hearing on October 23, 2012, the Court finds that Plaintiff has not established an entitlement to equitable tolling of the limitations period for her remaining claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117 (the "ADA"). The Court therefore dismisses these claims as time-barred. Further, the Court denies Plaintiff's latest motion to reconsider the Court's prior rulings and to appoint *pro bono* counsel.

I. PROCEDURAL HISTORY

Plaintiff was terminated from her job as a Statistical Data Management Analyst at Mount Sinai Hospital in August 2008.[1]

---

[1] The Court assumes the parties' familiarity with the factual and procedural background of this matter as set forth in detail in the September 24, 2012 Memorandum and Order. (Doc. No. 56 ("Sept. 24 Op.").) Here, the Court references only those facts from the evidentiary hearing that are relevant to the determination of Plaintiff's entitlement to equitable tolling of the statute of limitations and a brief procedural history necessary for context. These facts

Following her termination, Plaintiff filed a complaint with the New York State Department of Human Rights and received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on July 12, 2009. (Am. Compl. 5, 8.) The right-to-sue letter stated that, if Plaintiff wanted to file a lawsuit based on the charges, she had to do so within ninety days of receipt of the letter. (*Id.* at 8.)

Plaintiff commenced this action against Mount Sinai School of Medicine and certain unnamed agents by filing the Complaint on October 22, 2009 – more than ninety days after she received the right-to-sue letter. (Doc. No. 2 ("Compl.").) The Complaint alleged claims under Title VII; the ADA; New York State Human Rights Law, N.Y. Exec. Law §§ 290–97; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-109, *et seq.* (*Id.* at 1.) In an appendix to the Complaint, Plaintiff explained why she did not timely commence the action. She stated that she could not file the Complaint within the ninety-day limitations period because (1) English is not her native language; (2) she needed to conduct legal research; and (3) she visited many lawyers but was unable to find one to assist her. (*Id.* at 7.)

On December 4, 2009, the Honorable Andrew J. Peck, Magistrate Judge, issued an order to show cause why the Complaint should not be dismissed as untimely ("Order to Show Cause"). (Doc. No. 4.) In response, on December 28, 2009, Plaintiff revised the justifications for her late filing. (Decl. of Rory J. McEvoy, dated Sept. 30, 3011, Doc. No. 36 ("McEvoy Decl."), Ex. 7.) In particular, she stated that she visited

---

are drawn primarily from the transcript of the October 23, 2012 evidentiary hearing ("Tr.") and the exhibits introduced by Defendants during the hearing ("Ex.").

the Court's *Pro Se* Office on October 12, 2009 and attempted to file the Complaint that day. (*Id.*) During that visit, though, she purportedly received a set of forms from a representative in the *Pro Se* Office. (*Id.*) Plaintiff allegedly gave the forms "a quick glance" and told the representative that she "didn't know how to fill up those forms," at which point, Plaintiff claims, the representative assured her that she could take the forms home and bring them back later, even though the representative had acknowledged that October 12 was Plaintiff's last day to file. (*Id.*)

On April 15, 2010, the Court dismissed this action for failure to timely serve and noted that Plaintiff's federal-law claims were untimely because Plaintiff did not commence the action within ninety days of the date she received the right-to-sue letter. (Doc. No. 8.) Plaintiff appealed, and, on June 27, 2011, in connection with ruling on Plaintiff's *ex parte* motion for the appointment of *pro bono* appellate counsel, the Second Circuit remanded the matter for consideration of two questions: (1) "has Appellant demonstrated good cause for an extension of time to effect service under Federal Rules of Civil Procedure 4 or 6, or absent good cause, is an extension still warranted under Federal Rule of Civil Procedure 4," and (2) "has Appellant shown that she is entitled to have the time for filing her action equitably tolled based upon the totality of the response she provided to the magistrate judge's December 2009 order to show cause or any other documents she has provided to the district court"? (Doc. No. 16 (internal citations omitted).)

Turning immediately to the first issue raised in the Circuit's remand order, on July 5, 2011, the Court exercised its discretion under Rule 4(m) of the Federal Rules of Civil Procedure to grant Plaintiff a thirty-day extension of time to serve Defendants

2

with the Complaint. (Doc. No. 20.) At Plaintiff's request, the Court also granted leave to file an amended complaint. (*Id.*) Moreover, to ensure that Plaintiff could fully and fairly litigate her claims, on August 17, 2011, the Court granted Plaintiff's request for the appointment of *pro bono* counsel (Doc. No. 26), appointing Vladeck, Waldman, Elias & Engelhard, P.C. ("Vladeck"), one of the nation's preeminent labor and employment law firms, to serve as her counsel (Doc. No. 34). Notwithstanding the appointment, Plaintiff ultimately declined Vladeck's services and opted to proceed *pro se* despite multiple prior requests for *pro bono* counsel. (*Id.*)

On July 7, 2011, Plaintiff filed the Amended Complaint (Doc. No. 21), which repleaded her discrimination claims and added new causes of action for negligence and medical malpractice stemming from treatment she received in June 2008 (*id.* at 22–24). In addition, the Amended Complaint set forth new facts relating to the second part of the Circuit's remand order: whether Plaintiff is entitled to equitable tolling. Plaintiff attached to the Amended Complaint a copy of her December 28, 2009 response to the Order to Show Cause in which she stated that she first visited the *Pro Se* Office on October 12, 2009. (Am. Compl. 45; *see* Tr. at 52:8–11; McEvoy Decl. Ex. 7.) This submission echoed Plaintiff's statement during a conference held on July 5, 2011 – a few days before she filed the Amended Complaint – during which she explained that she first went to the *Pro Se* Office on October 12, 2009. (McEvoy Decl. Ex. 18; *see* Tr. at 51:4–12; Ex. 6.) Plaintiff again repeated this assertion in letters dated July 26, 2011 and August 5, 2011 (McEvoy Decl. Exs. 21, 22; *see* Tr. at 53:5–8, 52:20–22) and during a telephone conference with the Court on August 16, 2011, (McEvoy Decl. Ex. 23; Tr. at 56:16–23). In sum, on at least six different occasions, Plaintiff identified October 12, 2009 as the date on which she visited the *Pro Se* Office.

Defendants moved to dismiss the Amended Complaint on September 30, 2011. The Court granted Defendants' motion with respect to Plaintiff's tort claims for negligence and medical malpractice but declined to dismiss Plaintiff's claims under Title VII and the ADA, concluding that, notwithstanding the lack of documentary support for Plaintiff's assertions, disputed issues of fact remained as to whether Plaintiff was entitled to equitable tolling. (*See* Sept. 24 Op. at 8.) To determine whether Plaintiff was entitled to equitable tolling of the statute of limitations for her surviving discrimination claims, the Court scheduled an evidentiary hearing for October 23, 2012.

Before the hearing, Plaintiff filed several motions, requesting that the Court reconsider its decision to dismiss Plaintiff's claims for negligence and medical malpractice, recuse itself, and adjourn the evidentiary hearing, all of which the Court denied. (*See* Doc. Nos. 57–64.) Additionally, on the eve of the hearing, Plaintiff filed a motion repeating her request that the Court recuse itself because of perceived bias and adjourn the hearing. (Doc. No. 65 ("Oct. 22 Motion").) As part of this motion, Plaintiff asserted a new fact: that a case manager at the Court of Appeals for the Second Circuit informed her that there is no time limitation for filing negligence or medical malpractice claims. (*Id.* at 3, 4.) The Court denied Plaintiff's motion and the hearing proceeded as scheduled on October 23, 2012. (Doc. No. 66.)

3

## II. THE HEARING

During the evidentiary hearing, Plaintiff testified on her own behalf and called Maggy Duteau, a friend whom Plaintiff had spoken to before filing this lawsuit. The Court also heard testimony from Mirlande Tse, who supervised the Court's *Pro Se* Office at the time Plaintiff commenced this action, regarding the *Pro Se* Office's policies and procedures. The witnesses' testimony is summarized as follows.

### A. Plaintiff

Plaintiff testified that she moved to the United States from China in 1998 and received a master's degree in applied statistics from Columbia University in 2001. (Tr. at 32:22–33:2.) She received an additional master's degree in health education from Columbia University in 2006. (*Id.* at 33:3–5.) Although English is not Plaintiff's native language, Plaintiff took entrance exams in English to gain admission to these programs (*id.* at 33:13–34:3), and the programs themselves were conducted in English (*id.* at 34:21–24).

Plaintiff testified that she received a right-to-sue letter from the EEOC on July 12, 2009 (*id.* at 38:4–8) and that the letter stated she must file a lawsuit within ninety days of receipt or she would lose her right to sue (*id.* at 36:11–15; Ex. 1). However, Plaintiff stated that she was confused by the letter and did not understand how to proceed "to the next step." (Tr. at 39:12–14.) Nevertheless, Plaintiff also testified that she counted ninety days from when she received the right-to-sue letter, which she determined to be Saturday, October 10, 2009. (*Id.* at 17:15–21.) Because the Court was closed on Monday, October 12, 2009 in observance of Columbus Day, the first business day following October 10, 2009 was October 13. (*Id.* at 58:1–12.) Although Plaintiff had asserted on at least six separate occasions that she visited the *Pro Se* Office on October 12, 2009, she insisted at the hearing – for the first time – that she visited the Office on October 13. (*Id.* at 15:21–22.) To reconcile the obvious inconsistency between her pre-hearing statements and her sworn testimony, Plaintiff explained that she did not remember the exact day when she first went to the *Pro Se* Office to file the Complaint, only that it was the first business day after a weekend, about ten days before October 22, 2009, when she filed the Complaint. (*Id.* at 58:7–12.) Plaintiff further stated that she knew she went to the *Pro Se* Office on the first business day following a weekend because she lived across the street from a bar and could discern weekdays from weekend days based on the noise level at the bar, which was generally noisy on weekends but quiet on work nights. (*Id.* at 16:2–6.) Additionally, Plaintiff downplayed the significance of the discrepancy by noting that, before Defendants filed their motion to dismiss, no one else involved in this litigation had noticed that she could not have come to the courthouse on October 12, 2009, and that Columbus Day is not as widely observed as other holidays such as Thanksgiving or New Year's Day. (*E.g.*, *id.* at 57:22–58:14, 65:8–13.)

In any event, on the witness stand, Plaintiff asserted that, on October 13, 2009, she spoke with an individual at the *Pro Se* Office service window (the "Window"), and showed her the right-to-sue letter. (*Id.* at 18:3–4.) According to Plaintiff, the representative looked at the letter and told Plaintiff that it was the ninetieth day. (*Id.* at 18:4–5.) Plaintiff alleges that she and the representative from the *Pro Se* Office then used a calendar and together counted out ninety days multiple times, ultimately arriving at October 12, 2009. (*Id.* at 18:6–12.) Notably, Plaintiff did not state that she told the clerk when she had received the

4

letter, nor did Plaintiff testify that they determined the ninetieth day actually fell on October 10, 2009 or that the deadline ultimately fell on October 13, 2009. According to Plaintiff, this conversation took place between 3:30 p.m. and 4:00 p.m. (*Id.* at 18:24–25.)

Although Plaintiff stated that she saw the representative "many times" on that date, Plaintiff could not recall any details about the representative. (*Id.* at 19:1–5.) For example, although Plaintiff remembered that the representative was a woman, she could not state her race or whether she was old or young. (*Id.* at 20:2–10). Interestingly, Plaintiff recalled that this individual was approximately the same weight as Plaintiff (*id.* at 22:8–10), but Plaintiff could not provide any details about the representative's height or any other distinguishing details (*id.* at 21:23–22:3).

According to Plaintiff, the representative gave her forms to fill out, but Plaintiff did not "understand the vocabulary" and "completely g[o]t lost." (*Id.* at 21:7–17.) Nevertheless, Plaintiff reviewed the forms and discovered that the filing fee for commencing a civil action was $350.00. (*Id.* at 20:19–23, 22:13–14.) Because she could not afford to pay the filing fee, Plaintiff went back to the Window for assistance, whereupon she was given a form to request leave to proceed *in forma pauperis*. (*Id.* at 21:15–17, 22:22–23:10.)

Plaintiff stated that she could not complete the forms without assistance, so she called Duteau and another unspecified friend to help her with the forms, placing the call on her cellular phone while inside the *Pro Se* Office. (*Id.* at 23:7–24:1.) When confronted on cross-examination about the courthouse's policy requiring visitors to check their cellular phones upon entering the building, Plaintiff reversed course, admitted that she did not make a call from inside the courthouse, and speculated that she must have run out of the building to make the calls before returning to the *Pro Se* Office. (*Id.* at 32:9–12; 67:11–21.) In any event, Plaintiff testified that her friends were unable to assist her, prompting her to return to the Window shortly after 4:00 p.m., at which time she sought help from the same representative who had helped her before. (*Id.* at 24:11–25:8.) The representative was still unable to help Plaintiff to complete the necessary paperwork (*id.* at 25:14–17), so Plaintiff once again tried to complete it on her own (*id.* at 25:23–26:3). Plaintiff testified that she went back to seek assistance one last time and specifically reminded the representative that it was Plaintiff's last day to file a complaint and that she was unable to complete the necessary forms.[2] (*Id.* at 26:23–27:2.) Plaintiff asserted that the representative then told her to take the "forms home [and] bring [them] back later." (*Id.* at 28:7–17, 50:4–6.)

Plaintiff testified that she took the forms home with her and returned to file them on October 22, 2009. (*Id.* at 30:10–14.) According to Plaintiff, she was not able to complete the forms sooner because she needed assistance and Duteau was only available to help her on the weekend. (*Id.* at 30:15–24.) Plaintiff stated that Duteau did eventually complete the paperwork for her, and another friend allowed her to make the necessary copies in his or her office. (*Id.* at 30:17–31:3.)

---

[2] According to Plaintiff, during this time, a second woman from the *Pro Se* Office appeared and Plaintiff spoke with her briefly. (*E.g.*, Tr. at 28:4–10.) Plaintiff could not provide a detailed description of this woman, but when pressed, she stated that the woman "might" have been Caucasian, around forty-five years old, with short hair, of average weight, and perhaps slightly taller than Plaintiff. (*Id.* at 28:19–29:19.)

5

On cross-examination, Plaintiff conceded that she had not mentioned this series of events when she initially explained why the Complaint was untimely. (*Id.* at 42:8–23.) Plaintiff admitted that she first offered this explanation in a submission she made on December 28, 2009 in response the Order to Show Cause issued by Magistrate Judge Peck. (*Id.* at 47:1–11; Exs. 4, 5.) To excuse her initial omission, Plaintiff explained that, after she received the Order to Show Cause, she consulted the unidentified friend whom she had called when she first went to the Court's *Pro Se* Office. (Tr. at 49:14–25.) While speaking with this friend, Plaintiff suddenly remembered her conversation with the woman at the Window in which Plaintiff was told that she could take the forms home and bring them back later. (*Id.* at 49:25–50:6.)

### B. Maggy Duteau

The Court also heard testimony from Maggy Duteau, a lawyer and friend of Plaintiff. (*Id.* at 5:19–24.) When asked if Plaintiff called Duteau from the *Pro Se* Office on October 13, 2008, Duteau initially responded in the affirmative. (*Id.* at 5:15–18.) However, when asked just moments later during what year these events transpired, Duteau could not recall. (*Id.* at 6:21–7:2.) Duteau then testified that she could not remember the specific date, only that it was in October. (*Id.* at 8:10–18.) Duteau also said that she did not know where Plaintiff was when she called and had only assumed that Plaintiff was at the courthouse. (*Id.* at 10:7–21.)

### C. Mirlande Tse

Tse supervised the *Pro Se* Office in this courthouse for six years (*Id.* at 71:4–10), and she was the *Pro Se* Office supervisor in October 2009, when Plaintiff claims to have sought the Office's assistance (*id.* at 72:4–8). Tse stated that, on average, about twenty litigants visit the Window each day (*id.* at 74:22–25), but she noted that the Office does not keep a record or log of who visits (*id.* at 75:1–9).

Tse described the *Pro Se* Office's policies and protocols as follows. If a *pro se* litigant visits the Window and wants to file a new action, representatives of the *Pro Se* Office are instructed to give the litigant the appropriate forms based on the type of case the individual wishes to bring. (*Id.* at 75:10–17.) For example, for employment discrimination claims, the litigant would be given the form complaint for employment discrimination actions, and, if he or she could not afford the $350.00 filing fee, the Office would provide a fee waiver or *in forma pauperis* form. (*Id.* at 75:18–76:2, 76:9–17.) Additionally, in cases involving employment discrimination, the representative would typically ask the litigant if he or she has a right to-sue-letter. (*Id.* at 76:5–9.)

Representatives from the *Pro Se* Office are not allowed to provide legal advice. (*Id.* at 77:1–10.) Tse explained that, in prohibiting *Pro Se* Office representatives from giving legal advice, the Office also prohibits them from calculating filing deadlines or telling litigants whether filings are timely. (*Id.* at 77:1–20.) Representatives in the *Pro Se* Office are permitted to provide litigants with a calendar so that the litigants can determine, on their own, whether their submissions are timely; however, Tse emphasized that representatives may not even *assist* a litigant in calculating when a deadline expires. (*Id.* at 77:21–78:2.) In the event that a litigant tells a representative that it is his or her last day to file but that the litigant cannot complete the forms before the office closes at 5:00 p.m., Tse explained that

representatives are instructed to inform litigants about the night deposit box and to inform them how to time-stamp submissions. (*Id.* at 78:3–17.) She also explained that if a representative notices that a litigant has a right-to-sue letter that is more than ninety days old, the representative might encourage the litigant to explain why he or she is commencing the action after the deadline. (*Id.* at 77:1–10.) Tse further testified that, in her experience, representatives in the *Pro Se* Office adhere to these policies and do not give legal advice to litigants.[3] (*Id.* at 78:18–22.)

On cross-examination, Tse explained that each representative undergoes about two months of peer-to-peer training before they are permitted to engage in one-on-one interactions with litigants. (*Id.* at 81:7–82:3.) Additionally, representatives are encouraged to ask their co-workers or their supervisor for assistance when they are working at the Window. (*Id.* at 82:4–17.) Tse acknowledged that, as a supervisor, she did not directly observe all interactions at the Window and could not say what happened when she was not present, but she reiterated that the policy is not to provide legal advice to *pro se* litigants. (*Id.* at 83:9–16.)

### III. POST-HEARING PROCEEDINGS

Following the hearing, on November 13, 2012, Plaintiff moved the Court to (1) reconsider, for the fourth time, its prior decision to dismiss as untimely Plaintiff's claims for negligence and medical malpractice; (2) grant a renewed application for the appointment of *pro bono* counsel; and (3) provide a copy of the transcript of the October 23, 2012 hearing. (Doc. Nos. 68 & 69.) On January 28, 2013, Plaintiff filed a mandamus petition with the Second Circuit, seeking, among other things, this Court's recusal from this matter.

### IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The parties do not dispute that Plaintiff's remaining claims are time-barred unless the statute of limitations was tolled. The doctrine of equitable tolling permits courts to extend a statute of limitations on a case-by-case basis to prevent unfairness. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). However, "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his [or her] rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted). To warrant equitable tolling, a plaintiff must demonstrate "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citation and internal quotation marks omitted). It is difficult for a plaintiff to establish entitlement to equitable tolling. *See Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978) ("[E]ven assuming the Title VII time limits are not strictly jurisdictional, the tolling of those limits may be very restricted. The [Supreme] Court implied that tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in

---

[3] Although the manual given to *Pro Se* litigants at the time Plaintiff filed the Complaint was not made part of the record, the policy Tse described as existing at the time Plaintiff commenced this action is consistent with the policy set forth in the present version of the *Pro Se* Office manual. (Tr. at 86:20–23; 87:9–17; Ex. 20.) Similarly, the *Pro Se* Office's website currently states that members of the *Pro Se* Office are not permitted to calculate deadlines for litigants. (Tr. at 88:8–25; Ex. 21.)

7

some extraordinary way been prevented from asserting his rights . . . ." (citing *Elec. Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229, 237 n.10 & 238 (1976))). Finally, a plaintiff bears the burden of demonstrating that he or she is entitled to equitable tolling. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

In light of the evidence adduced at the evidentiary hearing, the Court sees no basis for equitable tolling. Plaintiff has established neither that she went to the *Pro Se* Office on October 13, 2009 nor that a representative of the *Pro Se* Office told her that she could file the Complaint after the ninety-day deadline. The Court finds that Plaintiff's shifting testimony regarding her visit to the *Pro Se* Office was not credible. When confronted with contradictions and legal impediments to her claim, she manufactured new facts, clearly trying to save her case from dismissal.

For example, on at least six separate occasions Plaintiff had stated that she went to the *Pro Se* Office on October 12, 2009. This was not possible, however, as Plaintiff now acknowledges. Her explanation for this repeated mistake – an explanation that cross-referenced the decibel level at local bars with federal holidays and workdays – bordered on the preposterous and had the hallmarks of an extemporaneous explanation manufactured on the witness stand. In any event, the Court finds the explanation not to be credible, so it is insufficient to establish that she went to the *Pro Se* Office on October 13, 2009.

Moreover, the evolving quality of Plaintiff's narrative about her interactions with the *Pro Se* Office also discredited her testimony. Significantly, when Plaintiff first explained her untimely filing in her written addendum to the Complaint – attributing her late filing to insufficient language skills and the need to conduct more research and retain counsel – she failed to mention that she had ever visited the courthouse or attempted to file a complaint within the prescribed ninety-day period. (Compl. at 7; Tr. at 42:20–43:25.) Neither did she mention that she had been told by a representative of the *Pro Se* Office that she could file the Complaint after the filing deadline. (Compl. at 7; Tr. at 42:20–43:25.) Plaintiff developed this excuse later, in response to the Order to Show Cause from Magistrate Judge Peck that rejected the initial set of excuses offered in the appendix to the Complaint. (*Id.* at 48:2–5; Ex. 5.) Her alleged visit to the *Pro Se* Office included three visits to the Window and multiple phone calls, which must have entailed multiple discrete passes through the Court's security stations.[4] It is unlikely that Plaintiff, or any other litigant in her position, would forget this eventful visit during which Plaintiff purportedly received a clerk's blessing to take the "forms home [and] bring [them] back later." (Tr. at 26:7–12, 49:25–50:6.) Nor can the Court credit Plaintiff's assertion that she "suddenly remembered" these events when speaking to a friend after she received the Order to Show Cause.

Further, the Court finds that Duteau's testimony does not support Plaintiff's assertion that she went to the *Pro Se* Office on October 13, 2009. Duteau admitted that she could not remember the specific date when Plaintiff called her (*Id.* at 8:10–18), and Duteau did not know whether Plaintiff

---

[4] The Court also notes that Plaintiff's testimony about three separate visits to the Window and deliberate review of the forms provided by the *Pro Se* Office directly contradicts her December 28, 2009 statement, in which she recounted only one encounter with the *Pro Se* Office representative and only "a quick glance" at the forms provided to her. (*See* McEvoy Decl. Ex. 7.)

was in fact at the courthouse when they spoke on the phone (*id.* at 10:7–13). Thus, Duteau's testimony does not corroborate or support Plaintiff's assertion that she went to the *Pro Se* Office on October 13, 2009.

Plaintiff's proffered excuse for her late filing is further undermined by *Pro Se* Office policy. As Tse credibly testified, if a representative in the *Pro Se* Office identified Plaintiff's filing deadline and told her that she could take the necessary paperwork home and file a complaint later, that advice would have directly contravened the Office's policies. Specifically, these policies prohibit representatives from providing legal advice and calculating filing deadlines. That a representative would flagrantly violate this policy and use a calendar to determine Plaintiff's filing deadline is implausible. The prospect that a representative of the *Pro Se* Office would do this multiple times, as Plaintiff contends, is even less likely. Moreover, Plaintiff did not offer any explanation as to (1) how this representative knew when Plaintiff had received the right-to-sue letter, which is necessary to calculate the filing deadline, or (2) why the representative determined that October 12, 2009 was the ninetieth day when, in fact, October 10 fell ninety days after Plaintiff received the right-to-sue letter. Indeed, if the representative had actually calculated Plaintiff's deadline, one would expect the representative would have noticed Columbus Day and identified the correct deadline, which was October 13, 2009. Additionally, Plaintiff does not offer any explanation as to why this representative would have told her she could file this action after the filing deadline, when that would have been clearly incorrect and in violation of *Pro Se* Office policies.[5]

The Court's conclusion is further buttressed by the lack of detail and the gaps in Plaintiff's story. Although Plaintiff was allegedly able to recall her conversation with the individual at the Window in great detail, she was not able to provide even a basic physical description of that individual. Moreover, the fact that Plaintiff falsely testified that she made phone calls from the *Pro Se* Office using her cellular phone suggests that the details of this visit were manufactured simply to protect Plaintiff's claims from dismissal.

Finally, although the Court is aware that English is not Plaintiff's native language, the *in forma pauperis* form is only two pages long (Tr. at 83:23–25), and the form complaint for employment discrimination cases consists of barely four pages (*id.* at 84:23–85:21). Incarcerated individuals with far less education and far more limited English skills regularly complete the *in forma pauperis* form and complaint forms. In light of the fact that Plaintiff has two master's degrees from Columbia University – which she received by completing coursework in English – and in view of the other submissions that Plaintiff has made in this action, the Court simply cannot believe that these two forms so overwhelmed Plaintiff that she could not complete them.

\* \* \*

For all these reasons, the Court finds that Plaintiff has not established that she visited

---

[5] It is perhaps worth noting that, in connection with her October 22, 2012 motion for reconsideration of the dismissal of her tort claims, Plaintiff asserted for the first time that a case manager at the Second Circuit erroneously advised her that there is no statute of limitations for medical malpractice and negligence claims. (Oct. 22 Motion at 3, 4.) This allegation, in which she once again accused Court personnel of misleading her, further undermines Plaintiff's credibility and suggests her willingness to say virtually anything to advance her otherwise unsalvageable claims.

9

the *Pro Se* Office on or before October 13, 2009 – the last day for her to timely commence this action – and has not established that a representative of the *Pro Se* Office incorrectly advised her that she could commence this action at a later date.[6] Therefore, the Court finds that Plaintiff has failed to meet her burden of demonstrating that she is entitled to equitable tolling. Accordingly, because they were brought more than ninety days after Plaintiff received her right-to-sue letter, Plaintiff's claims under Title VII and the ADA are dismissed as untimely. *See Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) ("While the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.'" (quoting *Rice v. New Eng. Coll.*, 676 F.2d 9, 11 (1st Cir. 1982))); *Holmes v. NBC/GE*, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) ("[The ninety-day requirement should be strictly enforced and not extended . . . .").

V. NOVEMBER 13, 2012 MOTION

The Court is also in receipt of Plaintiff's motion, filed November 13, 2012, requesting that the Court (1) reconsider, for the fourth time, its prior decision dismissing Plaintiff's claims for negligence and medical malpractice, (2) provide Plaintiff with a copy of the transcript of the October 23, 2012 hearing, and (3) grant Plaintiff's renewed request for the appointment of *pro bono* counsel. (Doc. Nos. 68 & 69.)

Plaintiff's request for a copy of the October 23, 2012 hearing transcript is granted. However, Plaintiff's remaining requests are denied. With respect to her request for reconsideration, Plaintiff identifies no new facts or law that the Court overlooked or any other valid grounds for reconsidering the Court's prior ruling. In regard to her request for the appointment of *pro bono* counsel, the Court again notes that it previously granted such a request, but Plaintiff rejected an offer to be represented by one of the nation's preeminent labor and employment firms on a *pro bono* basis. In effect, Plaintiff seeks not just *pro bono* counsel or even objectively excellent *pro bono* counsel, which has been offered her; she requests *pro bono* counsel of her choice. In light of the scarcity of volunteer attorneys, granting her request would deprive other deserving causes of the assistance of counsel and would unreasonably burden the volunteer bar. And in any event, because Plaintiff's claims are all dismissed, there is no need for *pro bono* counsel. Plaintiff's motion is therefore denied as moot.

VI. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has not established an entitlement to equitable tolling of the statute of limitations governing her claims under Title VII and the ADA. Accordingly, these claims are dismissed. Further, Plaintiff's requests for reconsideration and for the appointment of *pro bono* counsel are denied.

---

[6] Even if Plaintiff had presented credible evidence that a mistake by the *Pro Se* Office contributed to her late filing, she does not explain why she waited until the *last* of the ninety days allotted to her before beginning the filing process. This delay alone raises a question as to whether Plaintiff demonstrated the sort of diligence that equitable tolling requires. *See Nyack Hosp.*, 86 F.3d at 12 ("Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled."); *see also Carlile v. S. Routt Sch. Dist. RE 3-J*, 652 F.2d 981, 986 (10th Cir. 1981) ("[The plaintiff's] own inexcusable delay in acting on her right to sue letter consumed approximately 69 days of the 90[-]day filing period. Under such circumstances, we are not inclined to hold that [plaintiff] is entitled to any equitable tolling of the 90-day period.").

The Clerk of Court is respectfully directed to (1) provide Plaintiff with a copy of the transcript of the October 23, 2012 evidentiary hearing in this matter; (2) terminate the motions pending at Doc. Nos. 68 and 69; and (3) close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 11, 2013
    New York, New York

\* \* \*

Plaintiff is proceeding *pro se*.

Defendants are represented by Rory McEvoy and Julie Sauer of Edwards Wildman Palmer LLP, 750 Lexington Avenue, New York, NY 10022.

11

A copy of this Opinion has been sent to:

Wen Liu
Lyx20031972@yahoo.com

12